## A. J. Gibbons, Appellee, v. Paducah & Illinois Railroad Company, Appellant.

1. RAILROADS, § 215*—*when damages are recoverable for obstruction of access to property by construction of embankment across street.* It is not essential to a right of recovery of damages by a property owner for the shutting off of ingress and egress to his property by the construction of a railroad embankment across a street that the lots should abut upon the obstructed street, if it appears that there is a special injury to the property, the only limitation being that this right extends at least to the next intersecting street.

2. RAILROADS, § 215*—*what does not affect right of recovery for loss of access to property by construction of embankment.* Owners of property bordering upon a street have, as an incident of ownership, a right of access by way of the streets, which cannot be taken away or materially impaired by the construction of a railroad embankment without compensation, and it is immaterial that the damage sustained is no greater than that sustained by the owners of other lots in the neighborhood.

3. RAILROADS, § 216*—*when damages accrue as natural result from construction of railroad embankment.* Damages accrue to some extent, as a natural result, from the construction of a railroad embankment diagonally across two streets, where, owing to a natural obstruction on one of them, access to the property is shut off in three directions and it is left in the condition of a blind court.

4. RAILROADS, § 216*—*what is proper basis for estimation of damages for deprival of access to property by construction of embankment.* The fair cash value of property before and after the construction of a railroad embankment shutting off access by way of the streets to the property is the proper basis for estimating damages.

5. RAILROADS—*when comparative value of property, access to which has been shut off by embankment, is question for jury.* The question whether property, the access to which by the streets is shut off by the construction of a railroad embankment, is of equal or greater value after the erection of the embankment than before is a question for the jury, in an action to recover damages for deprival of such access.

6. MUNICIPAL CORPORATIONS, § 876*—*what is essential to dedi-*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*cation of street.* To make a sufficient dedication of a street, the owner of the soil must devote the right of way to public use, and it must be accepted and appropriated by the public to that use by travel, and a recognition as a public highway by the proper authorities, by repairs or otherwise; but when a dedication is relied upon to establish the right, the acts of both the donor and the public authorities should be unequivocal and satisfactory of the design to dedicate on the one hand and to accept and appropriate to public use on the other.

7. TRIAL, § 304*—*what is not improper method of indicating refusal of requested propositions of law.* The refusal of propositions of law by the trial judge by taking up each one verbatim in his written opinion, commenting upon the reasons why he refuses it and at the conclusion of the comment stating that the proposition is refused, is sufficient, even though not in exact compliance with the statute requiring marking of propositions of law upon the paper as submitted.

Appeal from the Circuit Court of Massac county; the Hon. D. T. HARTWELL, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed April 5, 1918.

COURTNEY, HELM & HELM, for appellant; J. A. CONNELL, of counsel.

FRED R. YOUNG, for appellee.

MR. JUSTICE McBRIDE delivered the opinion of the court.

This is an action brought by the appellee to recover damages that he sustained by reason of an embankment erected across the streets of Metropolis, Illinois, by the appellant, whereby the streets were blockaded and the property of appellee injured. A jury was waived and cause was heard by the trial judge and judgment rendered against the appellant for $400 and costs, which judgment it is sought to reverse by this appeal.

It appears from the record in this case that on

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

May 9, 1910, the City of Metropolis passed an ordinance permitting the Herrin and Southern Railroad Company, its successors and assigns, to construct a railroad through the City of Metropolis, and to erect an embankment over and across Johnson, Seventh, Sixth, Vienna, Fifth, Fourth and other streets mentioned in said ordinance. Said railroad with the embankment was permitted to be built from the westerly line of the city limits of Metropolis to the northern line of Fourth street, where it connected with a bridge to be erected across the Ohio River. The embankments were permitted to be erected of earth, clay or other materials without openings for the streets or alleys; that afterwards, on or about October 15, 1914, the Herrin and Southern Railroad Company assigned all its interest in this franchise to the appellant, its successors and assigns. During the years 1915 and 1916 the appellant erected an embankment of the height of 20 to 25 feet across Johnson, Seventh, Sixth, Fifth and Vienna streets, and that in connecting the said railroad with the said bridge a viaduct was left at Fourth street, which was down near the bridge.

It further appears that the appellee was the owner of the west two-thirds of Lots 10, 11 and 12 in Block 56 of said city, which was located on the west side of the railroad and the embankment, and that the principal part of the city was east of the railroad and embankment; that there were two dwellings located upon this property fronting Sixth street, and Johnson street passed along the westerly side of the property. The railroad and embankment passed diagonally across Johnson street at a point between Seventh and Eighth streets, across Seventh street and diagonally through Block 57, thence across Sixth street and across the northeast corner of Block 56, in which appellee's property was located, thence across Vienna street and across the corner of Block 55, thence across Fifth street and through Block 37 down to and over

Fourth street. Prior to the erection of the embankment the appellee had had access to his property over Sixth and Johnson streets to any part of the city; that there was a natural obstruction in Johnson street between Fifth and Sixth streets that prevented travel by vehicle south on Johnson street. The streets numbered 5, 6 and 7 were parallel and extended east and west, Vienna and Johnson streets were parallel and extended north and south. The evidence of the appellee tends to show that he sustained a special injury to this property, by reason of the obstruction of said streets, while the evidence of the appellant tends to show that the property was as valuable after the construction of the embankment as before.

The declaration, after setting out the location of appellee's property and the construction of the said embankment and description and location of the streets and embankment, then charges that by reason of the construction of said embankment it permanently obstructed Johnson, Seventh, Sixth and Vienna streets and cut off and destroyed the way of ingress to and egress from the property of the plaintiff, by means whereof the plaintiff was greatly injured in his estate. A demurrer was interposed by defendant to this declaration, but was afterwards withdrawn and by stipulation all evidence proper under any proper plea should be introduced under the general issue. The evidence was heard, propositions of law submitted to the court and a judgment rendered for the plaintiff.

The appellant insists that the appellee is not entitled to recover for the reason, with others, that his lots did not border upon any portion of the streets at a point where same was obstructed, and insists that the overwhelming weight of authority is, that unless the obstruction exists at such point there can be no recovery. This presents for our determination the question as to the necessity of the lots bordering upon the street at the point of obstruction before a recovery

can be had. Many cases decided by courts of other
States are referred to by counsel, which seem to sup-
port this proposition, but we do not regard them as
authority upon this point. Our own Supreme Court
has said: "Whenever there is such an injury to the
owner's right of access to and use and enjoyment of
the property which is not common to the public gen-
erally, he has a right of action." *Village of Winnetka
v. Clifford*, 201 Ill. 478. This seems to be sustained
by many Illinois authorities cited in that case. In an
earlier case, which was before the Supreme Court, in
an action brought in the Circuit Court of Cook county
for the purpose of recovering damages alleged to
have been sustained by plaintiff by reason of the
construction by the city of a viaduct or bridge along
Austin and across Kinzie streets, at an intersection
some 220 feet west of plaintiff's premises fronting on
Kinzie street, the court said after reviewing many
authorities: "Whatever, therefore, may be the rule
in other States, it clearly appears from this review
of the cases that previous to and at the time of the
adoption of the present Constitution, it was the set-
tled doctrine of this court that any actual physical
injury to private property, by reason of the erection,
construction or operation of a public improvement in
or along a public street or highway, whereby its ap-
propriate use or enjoyment was materially inter-
rupted, or its value substantially impaired, was re-
garded as a taking of private property, within the
meaning of the Constitution, to the extent of the dam-
ages thereby occasioned, and actions for such injuries
were uniformly sustained." *Rigney v. City of Chi-
cago*, 102 Ill. 64. In another case where it was sought
to recover for damages by reason of an obstruction,
where the property was not located at the point of
obstruction, the Supreme Court said: "In this case
we think it plain that plaintiff was entitled to recover.
Her property fronted on Sixty-first street. It ex-

tended west to and cornered with that part of the
street which was vacated. By the vacation of the
street and the erection of the viaduct her property,
extending from the railroad tracks east to State street,
was shut in, and all access from the south and west
shut off. What was originally a thoroughfare along
the entire line of plaintiff's property fronting on
Sixty-first street was, by the action of the town,
turned into a blind court." *City of Chicago v.
Burcky,* 158 Ill. 110. It is true, as stated by counsel
for appellant, that before a party can recover, it must
appear that his damages are not of the same kind as
those sustained by the public at large, but that there
must be some particular damage to his property before
a right of action will accrue, and in commenting upon
this question the Supreme Court said: "This court,
however, does not hold, as have some authorities, that
the property must be immediately abutting in order
that the property owner sustain peculiar damages, as
in *City of Chicago v. Burcky,* 158 Ill. 103, it was held
that the vacation of a part of a street constituting a
thoroughfare across railroad tracks and the erection
of a viaduct in another place caused a special damage
to the landowner, whose property was thereby left
upon a blind court, in a manner different from the
general public, and entitled him to damages although
his property only touched the vacated portion at one
corner." *Hill v. Kimball,* 269 Ill. 409. In the same
case it is further said: "It is sometimes stated that
the test is not whether the property abuts but whether
there is a special injury, and it is ordinarily held that
the private right of access is the right not only to go
from one's property to the street and from the street
to the property, but also to use the street in either
direction as an outlet; that this right extends at least
to the next intersecting street." *Hill v. Kimball,
supra.*

After a careful examination of the authorities, we

are satisfied that it is not essential to a right of recovery that the lots should abut upon the obstructed street, if it appears from the evidence that there is a special injury to the property, and the only limitation that we know of to this rule is that set forth in the case of *Hill v. Kimball*, wherein it says: "That this right extends at least to the next intersecting street." *Hill v. Kimball, supra.*

It is next insisted by appellant that the injury, if any, was not peculiar to appellee's property and did not differ in kind from that sustained by the public in general and from the owners of other lots in the neighborhood. The fact that other lots sustained an injury of exactly the kind that appellee's did would not bar him of the right of recovery. Each and every property owner that may have sustained a particular injury over the public may have his right of action. If half a dozen other property owners were situated similarly to the appellee and sustained a like injury, which was common only to those particular persons, this would not, in our judgment, necessarily class the damage to the property as that being sustained by the public in general. The Supreme Court has said: "Owners of property bordering upon a street have, as an incident of their ownership, a right of access by way of the streets which cannot be taken away or materially impaired without compensation." *Illinois Malleable Iron Co. v. Lincoln Park Com'rs*, 263 Ill. 451, and cases there cited. We can see no reason why, if by the same act special damage is caused to several different persons, that that would in any manner deprive any one of them belonging to that class from their right of action. "The closing of a street in front of property, thereby turning the street into a blind court directly in front of the property, inflicts a special damage upon the owner which is not suffered by the public at large," and this may extend to one or more persons as we view it. *Village of Winnetka v.*

*Clifford, supra.* "The fact that many others sustain an injury of exactly like kind is not a bar to individual actions of many cases of a public nuisance." *City of Chicago v. Burcky,* 158 Ill. 109; *Hill v. Kimball, supra.*

It is again insisted by counsel that the evidence in this case did not warrant a finding and judgment for the plaintiff. Upon an examination of the record we find that the evidence of the witnesses of appellee tends to show that when this embankment was erected appellee's ingress and egress were cut off on Sixth street to the east, on Johnson street to the north, and by the natural obstruction on Johnson street to the south, so that the appellee's property was left in what is termed by some of the authorities cited as a blind court, and where property is placed in such a position it follows as a natural result that damages would accrue to some extent. The witnesses for appellee estimated the damage to this property, many of them at a greater sum than that allowed by the court, and based this damage upon its value before and after the erection of the embankment. It is insisted, however, that these witnesses took into consideration, in estimating this value, elements that were not proper. It is true some of them testified that the value of the property was diminished, without giving special reasons therefor, and some of them testified as to some other facts that were not material in estimating the damages, but all of them, as a final basis of value, fixed it at the fair cash market value of the property before and after, which we understand to be the correct rule for estimating damages in this class of cases. All of these witnesses gave as the principal element of damages the shutting off of ingress and egress to the property by this embankment. It is true that the witnesses for appellant testified that the property was of equal or greater value after the erection of the embankment than before, but these

were questions of fact for the court to determine, and we are unable to say, after the reading of this testimony, that the finding of the court upon this proposition was manifestly against the weight of the evidence.

It is next contended by counsel that the appellee's right of ingress and egress was not cut off because, as they say, a strip of ground of the width of 25 feet was left along the east side of the block in which appellee's property was situated, and connected with Sixth street, so that if he had desired he could have traveled over this strip of land, and thereby obtained ingress and egress to his property. The evidence in the case shows that while they were constructing the embankment this strip of 25 feet was left open and was used in the construction of the embankment, but there is no evidence of any dedication, no notifying the public that it was left open as a street or passageway, no acceptance by the city, or anything that indicated an intention to leave it open as a street or passageway prior to the institution of this suit, and nothing since, except the introduction of a plat in evidence showing the passageway marked thereon, but it is conceded that this was not part of the original plan of the construction of the road. It appears that no objection was made to persons traveling upon this strip of land, but that the principal use was by the contractors in completion of the embankment. There was nothing shown, as we see it, to have prevented the owner from at any time closing up the strip and stopping the public from traveling thereon. The city authorities had not been advised that the strip was left open for public use, and we do not understand the acts of the appellant to be such as to constitute a dedication. "To make a sufficient dedication, the owner of the soil must devote the right of way to public use, and it must be accepted and appropriated by the public to that use by travel, and a recognition as a public highway by the proper authorities, by repairs or otherwise. But when

a dedication is relied upon to establish the right, the acts of both the donor and the public authorities should be unequivocal and satisfactory of the design to dedicate on the one hand and to accept and appropriate to public use on the other.'' *City of Chicago v. Drexel,* 141 Ill. 105, and authorities there cited. The same doctrine is announced and this decision sustained in the case of the *City of Chicago v. Chicago, R. I. & P. Ry. Co.,* 152 Ill. 571, and the case of *Mason v. City of Chicago,* 163 Ill. 351. The acts of the appellant are not such as show an unequivocal and clear intent on its part to leave this strip of ground open as a public highway, or was it ever accepted by the city as such, and we do not believe that under the rules announced by our courts that it was ever dedicated to the public use, or even intended to be such until after the bringing of this suit, which would not affect the interest of the parties, as the suit must be tried with relation to the rights at the time of its institution.

It is next contended by appellant that the court erred in refusing to pass upon the propositions of law submitted by it, and it will be observed that the next error assigned, being the fourth, is that the court erred in refusing the several propositions of law, and each of them submitted. Seven propositions of law were submitted to the court by the appellant, and at the conclusion of the trial the court made a written finding and holding, which was embodied in the bill of exceptions and made part of the record. Instead of marking the propositions of law upon the paper as submitted, he takes up each proposition of law in this written opinion and quotes it verbatim, comments upon the reasons why he refuses it, and then, at the conclusion of the comment says that the proposition is refused. It is true that the court failed to mark these propositions of law in the exact manner required by the statute, but he did in each instance hold, and so stated, that the proposition was refused, which sub-

served the purpose of the statute. The object of the statute is to preserve the questions so that the court of review may determine whether the trial judge entertained correct views of the principles of law involved in the proceedings, and where the record discloses that the trial judge did pass upon the propositions of law and gives his views of the law, then a failure to mark the propositions of law in the manner required by the statute would be harmless error. *Chicago Union Traction Co. v. City of Chicago*, 202 Ill. 585. Where the trial court failed to pass upon the propositions of law in the manner provided by statute, it is said: "Although not a literal compliance with the Practice Act this indorsement clearly shows that the court did consider and pass upon it, and did refuse it as inapplicable to the case. It might as well have been marked 'refused.' We think that is the proper disposition to be made of it." *Moore v. Sweeney*, 28 Ill. App. 547.

We think the court did, in effect, in its opinion refuse the several propositions of law, and that the error assigned is without merit. The principles embodied in the several propositions of law have been passed upon in this opinion and it is not necessary to consider them in detail. While many courts of other jurisdictions entertain different views as to the several propositions involved in this case, we are of the opinion that the views expressed herein are in accord with the decisions of the courts of this State, and that the trial court committed no reversible error in its several holdings as to the law and the facts in the case. We can see no reason why the judgment should be reversed, and the judgment is affirmed.

*Affirmed.*