DIANN GAUGER, Plaintiff-Appellee—Cross-Appellant—Appellant, *v.* TYRONE GAUGER, Defendant-Appellant—Cross-Appellee—Appellee.

First District (2nd Division)   Nos. 77-1288, 77-1532, 78-634 cons.

Opinion filed March 13, 1979.

Peter Bianco, Jr., of Bianco & Szygowski, of Chicago, for appellant Tyrone Gauger.

Block, Levy & Becker, Chartered, of Chicago (Alvin R. Becker and John Voorn, of counsel), for appellee Diann Gauger.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

These consolidated appeals have their genesis in a contested divorce proceeding. After extensive evidentiary hearings, however, a consent judgment for divorce was entered on August 2, 1977, in favor of plaintiff-wife and against defendant-husband. Certain matters were agreed to by the parties and others were left to be determined by the trial court following further evidentiary hearings. Among those provisions to which the parties consented, in addition to the findings with respect to the divorce itself, were the following:

(1) permanent care, custody and education of two minor daughters was awarded to defendant with liberal visitation rights granted to plaintiff;

(2) defendant was to purchase the undivided one-half interest of plaintiff in and to their marital home, held in joint tenancy, within 60 days after entry of the judgment for divorce with a method for valuation of plaintiff's interest provided by formula; alternatively, defendant was authorized to sell the home if he was unable to secure financing for paying of plaintiff's interest, or if he was unable to afford its purchase, utilizing a formula calculated to achieve a sale within certain time limits; and

(3) defendant was to buy out plaintiff's equity in certain Wisconsin real estate held by them in joint tenancy.

Questions of division of furniture, alimony, child support and attorneys' fees were reserved for further determination by the trial court, which came on August 24, 1977, following additional evidentiary hearings. In the August 24 order, the trial court entered the following awards:

(1) defendant was to pay plaintiff the sum of $50 per month alimony, for a period of 3 years, or until she remarried;

(2) defendant was to pay plaintiff $500 for her interests in certain furniture;

(3) defendant was to contribute $2,500 toward plaintiff's legal expenses, totalling approximately $4,800, the balance of which were to be paid by plaintiff; and

(4) defendant's request for contribution from plaintiff toward child support was denied.

On August 29, 1977, defendant filed a notice of appeal, seeking review of the provisions of the August 24 order, and on September 14, 1977, he filed an amended notice of appeal seeking review of the "money

provisions" contained in the consent judgment of August 2, 1977, as well as the provisions of the subsequent order of August 24, 1977.

Meanwhile, plaintiff remarried.

Thereafter, on September 22, 1977, defendant petitioned for and secured an order staying execution and enforcement of the August 24 order and the money provisions of the August 2 order. The trial court also directed defendant to pay $1,500 in plaintiff's attorneys' fees for defense of the appeal. Defendant filed a notice of appeal from the provision of the September 22, 1977, order awarding attorneys' fees for defense of the appeal to plaintiff, who herself on October 13, 1977, filed a notice of appeal seeking review of that part of the September 22, 1977, order staying execution of the provisions of the orders of August 2 and 24, 1977.

While all appeals hereinabove noted were pending, defendant commenced a proceeding in the trial court seeking modification of that part of the August 24, 1977, order which denied his request for contribution from plaintiff toward child support. Following an evidentiary hearing, on March 20, 1978, a judge sitting in place of the original trial judge modified the child support provisions of the August 24, 1977, order and directed plaintiff to pay $35 per week toward child support, from which order plaintiff filed still another notice of appeal on March 27, 1978.

Plaintiff's evidence offered prior to the initial judgment herein revealed that she was employed by a magazine and earned $173.65 net per week. Her expenses approximated $745 per month for food, rent, utilities, insurance, debt retirement, transportation, clothing and medical costs, leaving a deficit of approximately $50 per month. Additionally, plaintiff had custody of another child from a previous marriage, for which she received $100 per month in support payments. Defendant's evidence showed that he earned $1,385.60 net per month. His expenses totalled approximately $1,310, including food, mortgage, utilities, insurance, debt retirement, fuel, clothing and miscellaneous items, leaving a surplus of approximately $75 of income over expenses.

I.

■■ Defendant contends that the trial court abused its discretion by failing to properly consider all the facts and circumstances before it in ruling on the questions of child support, alimony and attorneys' fees. With respect to child support, defendant contends that the court should have considered the projected cost of refinancing the marital home as an expense item, and, had it done so, such an expense would have raised the total amount of his expenses as against total income and should have significantly altered the court's approach to the issue. Defendant cites

*Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661, for the proposition that potential liability such as the refinancing payments must be considered in arriving at the court's conclusion with respect to child support payments. The record establishes that the trial court excluded the projected cost of refinancing in its determination because defendant assumed that expense in the agreement between the parties of his own volition. It is evident, however, that the court also could have considered the possibility of the alternative procedure under which defendant would sell the home if he could not afford to purchase plaintiff's interest or could not secure refinancing; in either event there would be no refinancing expenses incurred at all. To have recognized an expense where none may exist would have been error; *Green v. Green* does not hold to the contrary.

We find no error in the trial court's refusal to consider the possible mortgage refinancing and such payments which might ensue therefrom as part of defendant's potential liability at the time of the entry of the orders of August 2 and 24, 1977.

## II.

Defendant maintains that the income of the parties and their expenses demonstrate the impropriety of requiring defendant to contribute to the support of plaintiff, particularly when she was to receive the sum of approximately $19,000 from defendant from the refinancing or sale of the marital home in addition to the imminence of plaintiff's remarriage during the month following entry of the divorce judgment, relying for this latter point upon *Deahl v. Deahl* (1973), 13 Ill. App. 3d 150, 300 N.E.2d 497.

The assertion with respect to plaintiff's expected share of the equity as amounting to approximately $19,000 is derived from a figure arrived at tentatively, having been subject to further appraisals; it is not mentioned in the judgment for divorce, which expressly anticipates the necessity of obtaining future appraisals on the home prior to a final determination of plaintiff's equity. So too, the amount of refinancing monthly payments that defendant would have been required to make was indefinite at the time of the entry of the order.

The record shows that plaintiff has become liable for the balance of attorneys' fees in the initial divorce proceedings. Her brief further suggests that additional attorneys' fees were and will continue to be incurred by reason of her defense in the modification hearings, the instant three consolidated appeals, the proceedings anticipated upon remand, plus her tax liabilities on the proceeds due her from the sale of the marital home, which she estimates will consume almost two-thirds of her putative $19,000 share. Although the computations in her brief are not fully

supported by the record, plaintiff's sworn financial declaration statement received in evidence at the March 20, 1978, hearing shows a $4,000 liability for attorneys' fees incurred, lending a degree of veracity to her anticipated future legal expenses.

■■ We conclude that the court properly considered the income and expense items of each of the parties, including the possible $19,000 payment to plaintiff. The proper measure of alimony is the need of the wife at the time of the entry of the order considered in connection with the husband's ability to pay; no single factor is controlling and each case depends upon its individual facts. (*Stotlar v. Stotlar* (1977), 50 Ill. App. 3d 790, 365 N.E.2d 1097; *Scruggs v. Scruggs* (1974), 23 Ill. App. 3d 1004, 320 N.E.2d 406.) The amount of the award lies within the sound discretion of the trial court and its decision will not be set aside unless contrary to the manifest weight of the evidence. (*Hoffmann v. Hoffmann* (1968), 40 Ill. 2d 344, 239 N.E.2d 792; *Gilmore v. Gilmore* (1975), 28 Ill. App. 3d 36, 328 N.E.2d 562.) We find that award lies well within the range of the evidence.

■■ With respect to the issue of plaintiff's imminent remarriage, the court in the instant case clearly considered this possibility since the alimony award is expressly made to terminate upon plaintiff's remarriage. In *Deahl v. Deahl*, upon which defendant relies, intent to remarry was found germane because a substantial in gross award was there made and found to be inequitable upon the wife's remarriage which followed hard on the heels of the divorce (13 Ill. App. 3d 150, 159). In the instant case, one monthly payment of $50 was expended by defendant prior to the time that the alimony payments ceased, unlike the facts existing in *Deahl*. For the same reason, defendant's reliance upon *Riordan v. Riordan* (1977), 47 Ill. App. 3d 1019, 365 N.E.2d 492, is misplaced since in *Riordan* the wife was granted awards representing almost three-fourths of the husband's total assets, hardly comparable to the circumstances that prevailed in the instant case.

### III.

■ Defendant again invokes the $19,000 equity figure in his contention that the trial court's partial award of attorneys' fees was an abuse of discretion because the money thus to be realized by plaintiff was indicative of her financial ability to pay her own attorneys' fees. The evidence adduced at the trial reveals that defendant was a pipefitter, considered a skilled laborer earning $1,385 net per month; plaintiff was an unskilled clerical worker earning $173.65 net per week. The amount plaintiff hoped to realize from the sale of her equity in the home was uncertain and indefinite; defendant might also realize a similar amount if the house was sold instead of refinanced. The disparity between the

earning capacities of the parties as well as their respective incomes was clear, however, and constituted a sufficient evidentiary basis for the partial award of attorneys' fees. (*Berg v. Berg* (1967), 85 Ill. App. 2d 98, 229 N.E.2d 282; *Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282.) In *Kaufman,* the court made the following observation, equally pertinent to the facts in the instant case (22 Ill. App. 3d 1045, 1050):

> "[I]n this context, financial inability does not mean destitution. In divorce cases, when questions arise concerning suit money, the income and assets of both spouses must be considered; and if the wife's funds, though she has some, are insufficient, those of the husband can be reached so that the wife, without exhausting her own estate, can protect her rights in the marital litigation."

■■ Defendant also assigns error in the trial court's failure to make specific findings with respect to his ability to pay attorneys' fees or plaintiff's inability to pay, citing *Berg v. Berg* (1967), 85 Ill. App. 2d 98, 229 N.E.2d 282. *Berg* did not require such specific findings; rather, it referred to the absence of any finding *or evidence* in the record as to defendant's ability to pay in determining, through an independent review of the evidence, that plaintiff had ample resources to pay her own fees. This situation is dissimilar to that existing in the instant case, where such evidence exists. Neither specific findings of fact nor a special hearing on the question of a party's ability to pay is necessary to justify a fee award, particularly where, as here, neither party requests these procedures. *Rattray v. Rattray* (1976), 43 Ill. App. 3d 853, 357 N.E.2d 701; *Carvallo v. Carvallo* (1978), 62 Ill. App. 3d 394, 378 N.E.2d 1288.

Without reference to anything specific in the record, defendant imputes to the trial court "a degree of bias" alleged to be manifested in its ruling on the issues of alimony and child support, apparently on the basis of his sex. Our review of the evidence reveals no basis in fact for this claim and we find it to be without merit.

## IV.

■■ Although defendant has included in his notice of appeal of September 29, 1977, that provision of the September 22, 1977, order requiring him to pay $1,500 toward plaintiff's attorneys' fees in defense of the appeal, it is not argued in his principal brief; his reply brief contains a discussion of this issue in what he denominates a "cross appeal." Supreme Court Rule 341(e)(7) provides that points not argued are waived and shall not be raised in the reply brief, in oral argument, or on a petition for rehearing, a rule which has been judicially construed to preclude consideration of issues raised for the first time in a reply brief. (Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7); *In re Estate of Woodshank* (1975), 27 Ill. App. 3d 444, 325 N.E.2d 686; *Bess v. Daniel* (1976), 42 Ill. App. 3d 401,

355 N.E.2d 556.) Defendant's notice of appeal from the order of September 22, 1977, could not have been a cross-appeal since plaintiff's appeal from other provisions of this same order was filed more than two weeks later. Consideration of this issue is, therefore, deemed waived. Even were that not so, defendant's reading of *Fox v. Fox* (1978), 56 Ill. App. 3d 446, 371 N.E.2d 1254, to the effect that a trial court is without "jurisdiction" to enter such an order, misstates the case since there jurisdiction was clear but authority to enter such a decree was questioned, particularly in the absence of a hearing as to fees, a circumstance not present in the instant case.

In passing we note that section 508(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 508(a)(3)), which took effect eight days after the entry of the disputed order, October 1, 1977, reflects the public policy of the State to allow such attorney's fees in defense of appeals, including defense of appeals of post-judgment orders, on which the trial court could rely for authority were the case to be remanded on this point.

## V.

With respect to plaintiff's appeal from the modification order of March 30, 1978, she contends that defendant failed to demonstrate a substantial change in the circumstances of the parties since the entry of the order of August 24, 1977. Her motion to strike defendant's petition for modification received no ruling from the trial court. She urges error in the court's interpretation of section 510(a) of the Illinois Marriage and Dissolution of Marriage Act of 1977 (Ill. Rev. Stat. 1977, ch. 40, par. 510(a)), as requiring child support payments from a noncustodial parent irrespective of the requirement of substantial change. Section 510(a) provides, in pertinent part, that "* * * the provisions of any judgment respecting * * * support may be modified * * * only upon a showing of a substantial change in circumstances. * * *" Both the terms of the judgment order and the comments of the trial court during the course of the hearing reflect the court's conclusion that a substantial change as required by statute had indeed occurred; however, we believe that this conclusion is against the manifest weight of the evidence.

At the March 20, 1978, hearing defendant's evidence revealed that his net take home pay was $1,256.16, which constituted a reduction of $128.84 from his previous net monthly income of $1,385 by reason of his decision to refrain from working overtime so that he would be able to spend more time with his children. Defendant reported further, however, that his expenses were about the same at the time of this hearing as they were when the original child support order was entered. Plaintiff's testimony and documents established that her net income was increased to $868 per month, which she claimed was offset by increased expenses to $1,101 per

month. The trial court questioned and discounted part of her testimony with respect to the share of present household expenses which her new spouse became obligated to pay; however, no express diminution of plaintiff's expenses appears in the record and they may well be equal to or less than her income.

■■ ■ Plaintiff argues that the two factors which must be shown were absent at this hearing, namely, an increased need for the support of the children and a corresponding increased ability on the part of the wife to pay since the entry of the prior judgment. (*Goldberg v. Goldberg* (1976), 36 Ill. App. 3d 778, 781, 344 N.E.2d 721; *Kelleher v. Kelleher* (1966), 67 Ill. App. 2d 410, 214 N.E.2d 139.) In *Goldberg* the court set forth the rule as follows (36 Ill. App. 3d 778, 781):

> "The burden is on the * * * [movant] to prove a material change in circumstances by *clearly establishing an increased need for the support of the children and a corresponding increased ability to pay on the part of the [respondent] since the time of entry of the divorce decree. (Kelleher v. Kelleher,* 67 Ill. App. 2d 410, 214 N.E.2d 139.) In the instant case, [movant] did not offer any evidence demonstrating a change which necessarily increased the support needs of the children. We also conclude that [movant] failed to show that [respondent's] income had changed substantially since 1971." (Emphasis added.)

There is no evidence which demonstrates the increased needs of the children in the instant case. To the contrary, defendant testified that his current expenses were about the same as they had been at the time of the prior judgment for child support. Further, the evidence relating to plaintiff's increased ability to contribute to the support of the children is unsatisfactory since, as we have stated, the record is unclear with respect to whether her expenses equalled or were less than her increased salary.

For the foregoing reasons, the order directing plaintiff to pay $35 per week toward child support, failing to meet the clear showing required by the rule, must be reversed.

Our disposition of the issues hereinabove discussed renders moot the appeal plaintiff filed with respect to the order of September 22, 1977, staying execution of the money provisions of the August 2, 1977, consent judgment.

For the above and foregoing reasons, the orders of the trial court are affirmed in part and reversed in part and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Affirmed in part and reversed in part and remanded.

DOWNING and PERLIN, JJ., concur.