*In re* MARRIAGE OF SALLY ADAMS, f/k/a Sally Adams Noble, Petitioner-Appellant, and GEORGE NOBLE, Respondent-Appellee.

First District (1st Division)   No. 80-1447

Opinion filed January 19, 1981.

Sally Adams, of Evanston, *pro se* (Robert Jay Nye and Nye & Nye, of counsel), for appellant.

Stanley F. Kaplan, P. C., of Chicago (Claire Adair, of counsel), for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Sally Adams Noble (now Sally Adams) and George Noble were married July 16, 1965. Two children were born to the parties: Tracy, born August 25, 1968, and David, born March 16, 1970. On July 13, 1978, their marriage was dissolved. Pursuant to the judgment of dissolution, the wife was awarded permanent custody of the parties' two minor children. The judgment incorporated a property settlement agreement entered into between the parties on May 20, 1978. The agreement contained provisions regarding the division of property, maintenance and child support, custody and visitation of the children and certain miscellaneous matters.

With regard to maintenance and child support, the settlement agreement stated that the husband's yearly income was approximately $40,000 and the wife's current yearly income was $4,000. The agreement further provided that the husband agreed to pay the wife "for the support of herself and her minor children" $1,000 per month until her income equalled at least $15,000 per year, then reduced to $750 per month until her income equalled at least $25,000 per year, then reduced to $500 per month. The husband agreed that the "maintenance and child support" payments would be made until the last minor child of the parties was emancipated or had completed his or her college education as long as such child continued to permanently reside with the wife while completing college. The agreement stated that the parties intended the payments to be deductible by the husband on his income tax return and to constitute gross income to the wife on her income tax return.

During the period of their marriage, the parties occupied a home in Northbrook, Illinois. After dissolution, the wife and the two minor children continued to reside in the former marital residence. They later moved, leaving the residence vacant. The house was subsequently sold. With regard to the marital residence, which was held in joint tenancy by the parties, the settlement agreement, in relevant part, provided:

"* * * Wife shall have the right to retain the exclusive use and occupancy of the said premises until the sale of the premises which is intended to take place within two years from the date of this Agreement.

During the period of time that the Wife shall have exclusive use and occupancy of the matrimonial domicile, the Wife shall be solely responsible for the normal maintenance and upkeep costs of the aforesaid premises and appliances therein, and solely responsible for mortgage payments and tax and insurance payments as they become due,

Upon the sale of the matrimonial domicile, the net proceeds shall be equally divided between the parties, less expenses of the sale, repayment of an outstanding loan of $2,000 to parents of Wife, an outstanding loan of $1200 from the Northbrook Trust and Savings Bank, an outstanding loan of $1,430 against the Life Insurance policies, and any amounts due and owing either party for necessary repair work in contemplation of such sale for which the party has not been reimbursed."

On December 26, 1978, the husband filed a post-judgment proceeding to enforce provisions set forth in the parties' agreement concerning visitation with the parties' daughter. He requested that an attorney be appointed to represent the interests of the parties' minor children and that the wife be held solely responsible for costs incident to the former marital residence. On April 9, 1979, the court appointed an attorney to represent the minor child Tracy.

On January 30, 1979, the wife filed a response and counterpetition, requesting that the judgment be modified so as to reclassify payments designated as "maintenance and child support" in the parties' settlement agreement as only child support. She also requested that the husband be required to contribute one-half of the costs incident to the former marital residence, contribute one-half of the expenses of the children's private school education and pay an increase of 10% per year in child support payments.

On April 20, 1979, the wife remarried and on June 5, 1979, the husband filed a supplemental proceeding to have maintenance terminated and a figure set for child support. On July 5, 1979, the wife filed an amended counterpetition, in which she requested as additional relief that the husband be required to pay her attorney's fees and costs.

The affidavit by the wife in support of her counterpetition listed $555 in expenses directly attributable to the two minor children. Of the $555, $165 covered: clothing $100, education $20, medical $30 and personal $15. The amount of $390 was classified as "other expenses": entertainment $100, private lessons, sports and social activities $138.50, miscellaneous

additional incidentals $51.50, and summer camp $100. The affidavit also listed $2420.25 in expenses other than those directly attributable to the children: mortgage $427.75, taxes $88.25, insurance $10.10, utilities $130, food $450, transportation $70, auto insurance $24, personal clothing $100, medical $20, miscellaneous: car repair bills $87.77, telephone $100, furniture $100, sundry personal expense $50, miscellaneous additional incidentals $100, loan payments $562.38, and vacation $100.

On appeal, the wife argues that, exclusive of $190 personal expenses, 43% of her total household expenses of $2420.25, *i.e.*, $959, is attributable to the children.

Before any testimony was taken, the husband voluntarily consented to dismissal of his petition to enforce visitation provisions of the parties' agreement.

The wife testified that at the time of the dissolution of the marriage she was employed at an annual salary of $4000 and that at the time of the hearing she was earning an annual salary of $14,400. She further testified that the needs of the two minor children had increased since the date of the dissolution of the marriage, due to an increase in the cost of the children's clothing because they had grown and an increase in the cost of living. She also testified that there had been an increase in the cost of utilities, insurance, transportation, mortgage payments, taxes and car expenses since the date of dissolution of the marriage and that she was presently paying less for food than she had when she, the husband and the two minor children had resided together.

On cross-examination, she testified that although the $390 designated as "other expenses" for the children included $100 for summer camp, neither of the children had attended summer camp in the summer of 1979. However, in 1978 David had attended summer camp at a cost of between $100 and $150. She testified that Tracy was presently taking piano lessons at a cost of $13.50 per week and that David was not presently taking any private lessons. The wife also testified that the "social activities" label, which was part of the classification entitled "private lessons, sports and activities" and for which $138.50 per month was allocated, included movies, train rides to visit friends, allowances and birthday parties, and that the classification "entertainment" for which $100 was allocated was a separate expense. Both "private lessons, sports and social activities" and "entertainment" were part of the expenses constituting a portion of the $390 of "other expenses." She further testified that "miscellaneous additional incidentals" of $51.50, which were also part of the $390 of "other expenses," covered such items as part of the price of a piano, piano tuning and soccer shoes.

The husband testified that at the time of the dissolution of the marriage his gross monthly income was approximately $3000 and that at

the time of the hearing his gross monthly income was approximately $3500. He operated an environmental consulting organization as a sole proprietorship until the middle of July 1978. At that time the business was incorporated. His 1978 Federal income tax return reflected that the net income from the business while it was operated as a sole proprietorship in 1978 was $37,600 and that his income from the business after it was incorporated was a salary of $15,000, totalling an adjusted gross income of $52,660. He further testified that he had the power to determine the amount of salary he would be paid and that the gross receipts for the fiscal year from the period beginning July 1978 and ending at the end of June 1979 was $26,195.76. On direct examination, he testified that $15,000 constituted the retained earnings of the corporation; on cross-examination, that the retained earnings of the corporation could be as high as $19,000 and that if he desired he could take this amount as additional salary.

The trial court found that the husband voluntarily consented to the dismissal of his cause to enforce his visitation rights and that there existed no ambiguity in either the provision in the settlement agreement concerning exclusive possession and occupancy of the marital home or the provision in the settlement agreement concerning the periodic payments of support and maintenance as being taxable to the wife and deductible by the husband.

On January 2, 1980, the court ordered, *inter alia*, that (1) the husband's action to enforce his visitation rights be dismissed; (2) the wife's request that the husband pay one-half the cost of the mortgage and other expenses incident to the former marital residence be denied; (3) the periodic payments of maintenance and support are taxable to the wife; (4) the husband pay the sum of $550 per month as child support for the support of the two minor children; (5) the husband may claim the two minor children as exemptions on his Federal income tax return; (6) the husband shall deduct the sum of $50 per month from support payments until the amount resulting from his payments of $1000 per month since the filing of his petition for modification is satisfactorily credited, commencing with the support payment due for January of 1980; (7) the attorney appointed to represent the minor child Tracy is awarded the sum of $750 as attorney's fees and each party pay one-half of that fee; and (8) each party pay his or her own attorney's fees.

The wife's motion for post-trial relief was denied. She appeals from both the order entered on January 2, 1980, and the denial of her post-trial motion, contending that (1) the trial court erred in refusing to find that the unallocated award of $1000 per month for "maintenance and child support" constituted solely child support; (2) the trial court abused its discretion in determining that child support payments should be $550 per

month and subject to a deduction of $50 per month until the six months of alleged overpayments of $450 per month were repaid; (3) the trial court erred in denying her petition for attorney's fees and costs of this action; (4) the trial court erred in ordering that she was solely responsible for all the expenses incurred in maintaining the jointly owned former marital residence after petitioner vacated the premises; and (5) the trial court erred in directing that the husband was entitled to claim the parties' two minor children as tax exemptions. We affirm in part and reverse in part.

The wife first contends that the trial court erred when it found that the $1000 per month payments, representing both maintenance and child support, be reduced to a $550 per month payment representing child support only. She argues that the trial court abused its discretion in reducing the child support award because, even though the written agreement entered into by the parties and thereafter incorporated into the judgment of dissolution designated the payments as "maintenance and child support," the parties' intention was that the payments represented child support only and no showing was made of a substantial change in circumstances warranting such a reduction.

■■ The intention of the parties must be determined from the instrument itself and the use of parol evidence is neither necessary nor proper where an agreement is unambiguous. (*Weber v. Weber* (1979), 77 Ill. App. 3d 383, 387, 396 N.E.2d 43.) "An instrument is ambiguous if its meaning is susceptible of being interpreted in more than one sense." (*In re Marriage of Kekstadt* (1980), 85 Ill. App. 3d 952, 954, 407 N.E.2d 746.) It is a question of law to be determined by the court whether or not an agreement is ambiguous. *Weber.*

We find that there is no ambiguity in the agreement. The language is clear, and its meaning is not susceptible of being interpreted in more than one sense. We find that in this case the payments designated "maintenance and child support" were just that and were not payments constituting only child support.

The wife's second contention is that the trial court abused its discretion in setting the child support payments at $550 per month, subject to a deduction of $50 per month until the six months of alleged overpayments were repaid.

Initially, we note that upon her remarriage the husband's obligation to pay future maintenance terminated. (Ill. Rev. Stat. 1977, ch. 40, par. 510(b).) Therefore, he was no longer required to pay that portion of the $1000 per month which constituted maintenance and the trial court determined that, with maintenance eliminated, the proper amount of child support for the two minor children was $550 per month.

■■■ The financial responsibility for the support of children is a joint and several obligation of each parent. (*In re Marriage of Edelstein* (1980), 82

Ill. App. 3d 574, 403 N.E.2d 323; *Riordan v. Riordan* (1977), 47 Ill. App. 3d 1019, 365 N.E.2d 492; *Hursh v. Hursh* (1975), 26 Ill. App. 3d 947, 326 N.E.2d 95.) The factors to be considered in determining the amount of child support are the financial resources of the child, the financial resources and needs of the custodial parent, the standard of living the child would have enjoyed had the marriage not been dissolved, the physical and emotional condition of the child and his educational needs and the financial resources and needs of the noncustodial parent. (Ill. Rev. Stat. 1977, ch. 40, par. 505(a).) The determination of the proper amount of child support lies within the sound discretion of the trial court and will not be set aside absent an abuse of discretion. (*Edelstein; Scott v. Scott* (1979), 72 Ill. App. 3d 117, 389 N.E.2d 1271; *Sandberg v. Sandberg* (1973), 11 Ill. App. 3d 495, 297 N.E.2d 654.) We find no abuse of discretion here. Furthermore, an increase in child-support payments is justified only when the evidence establishes that the needs of the children and the earnings of the noncustodial parent have increased. *Scott v. Scott.*

The husband's testimony indicated that at the time the parties' marriage was dissolved his gross monthly income was $3000 and that at the time of the hearing his gross monthly income was $3500. The wife testified that the cost of the children's clothing had increased since the date of the dissolution. She also testified there had been an increase in the cost of living and in the cost of utilities, insurance, transportation, mortgage payments, taxes and car expenses since the date of the dissolution. Her affidavit listed $555 in expenses directly attributable to the two minor children. The evidence established that both the needs of the children and the earnings of the husband had increased. However, the wife testified that at the time of the dissolution of the parties' marriage, she was employed at an annual salary of $4000, but that at the time of the hearing she was earning $14,400 per year. Under the circumstances and considering the increase in her income, we cannot say that the trial court abused its discretion in setting child support for the two minor children at $550 per month.

The wife's third contention is that the trial court erred in failing to order the husband to pay all costs and attorney's fees incurred by her because (1) section 508(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 508(a)) specifically provides that it is the financial resources of the parties that controls the award or denial of attorney's fees and costs and all the evidence supports the husband's ability to pay and her inability to pay, and (2) the husband voluntarily withdrew his petition to enforce visitation and, pursuant to section 52(1) of the Illinois Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 52(1)), a party who voluntarily withdraws his petition will be assessed costs. She notes that the attorney appointed to represent one of

the minor children in the visitation dispute was appointed on motion made by the husband. Her petition requested that the husband be ordered to pay her attorney's fees and costs in an amount in excess of $10,000. The attorney appointed to represent the minor child filed a petition for attorney's fees. The trial court ordered that each party pay his or her own attorney's fees and one-half of the $750 awarded as fees for the child's attorney.

Section 508(a)(2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 508(a)(2) provides:

> "(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse, which award shall be made in connection with the following:
> * * *
> (2) The enforcement or modification of any order or judgment under this Act."

Section 506 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 506) provides:

> "The court may appoint an attorney to represent the interests of a minor or dependent child with respect to his support, custody and visitation. The court shall enter an order for costs, fees and disbursements in favor of the child's attorney. The order shall be made against either or both parents, or against the child's separate estate."

■■ The general rule with regard to an award of attorney's fees in a marriage dissolution case is that the allowance of those fees is justifiable where the party seeking the award shows both the inability to pay and the ability of the other spouse so to do. (*In re Marriage of De Frates* (1980), 91 Ill. App. 3d 607, 414 N.E.2d 1188; *Grieman v. Friedman* (1980), 90 Ill. App. 3d 941, 414 N.E.2d 77.) An award of attorney's fees lies within the sound discretion of the trial court and its decision will not be disturbed unless the trial court's discretion is clearly abused. *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.

Initially, we note that section 52 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 52) does not provide for the taxation of attorney's fees and expenses as costs. (*Gilbert-Hodgman, Inc. v. Chicago Thoroughbred Enterprises, Inc.* (1974), 17 Ill. App. 3d 460, 308 N.E.2d 164.) Thus, in this case it is section 508(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 508(a)) which governs the issue of the allowance of attorney's fees, expenses and costs.

■■ Evidence of the financial status of both parties was before the trial court. Although the wife argues that she is "near destitution," we find that the record does not so reflect. Her affidavit indicates that her monthly expenditures exceeded her total monthly income. However, at the time she executed the affidavit she was unemployed. At the hearing, she testified that she was then employed at an annual salary of $14,400. Because she failed to demonstrate that she was financially unable to pay attorney's fees and costs, we find no abuse of discretion in the trial court's order directing each party to pay his or her own attorney's fees and costs and one-half of the fees for the attorney appointed to represent one of the minor children.

The wife's fourth contention is that her liability for the expenses of the marital residence was limited to the period of time she actually exercised her right to exclusive use and occupancy of the residence and that the trial court erred in refusing to direct the husband to pay one-half of the expenses incurred during the period of time the premises were vacant. We disagree. "As a general proposition of the law of joint tenancy, cotenants are equally liable for the cost of necessary repairs as well as payment of the mortgage and real estate taxes." (*Gilmore v. Gilmore* (1975), 28 Ill. App. 3d 36, 40, 328 N.E.2d 562.) However, joint tenants may contract with each other concerning one joint tenant's right to exclusive possession (*Tindall v. Yeats* (1946), 392 Ill. 502, 64 N.E.2d 903) or concerning responsibility for expenses.

■■ In the instant case, by the terms of the agreement the husband allowed the wife to have "the right to retain exclusive use and occupancy" of the former marital home until the premises were sold. She agreed to be "solely responsible for the mortgage payments and tax and insurance." We find to be without merit her contention that she is liable only for the expenses incurred during the period of time she exercised her right to exclusive use and occupancy of the residence by actually occupying the premises. The parties in their agreement did not agree that the wife could unilaterally impose responsibility for one-half of the expenses by vacating the premises. Because the parties agreed that she was to be solely responsible for the expenses incurred up until the sale of the former marital home, we find that the trial court was correct in finding that the husband was not responsible for one-half of the expenses incurred in maintaining the former marital residence after she had vacated the premises.

Her final contention is that the trial court erred in directing that the husband is entitled to claim the two minor children as tax exemptions on his income tax return. We agree.

It is fundamental that a judgment order must be supported by allegations in the complaint as well as by evidence. (*Larson v. City of*

*Loves Park* (1964), 48 Ill. App. 2d 191, 198 N.E.2d 525.) Affirmative relief cannot be properly granted without a pleading requesting it. *Tison & Hall Concrete Products Co., Inc. v. A. E. Asher, Inc.* (1967), 86 Ill. App. 2d 34, 229 N.E.2d 137.

■■ Because the issue of which of the parties would be allowed to claim the two minor children as tax exemptions was not raised in any of the pleadings, it was error for the trial court to rule on the issue.

The judgment of the circuit court of Cook County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

GOLDBERG, P. J., and McGLOON, J., concur.