*In re* MARRIAGE OF URSULA HOFSTETTER, Petitioner-Appellee, and FRANK HOFSTETTER, Respondent-Appellant.

First District (4th Division)    No. 81-849

Opinion filed November 25, 1981.

Douglas Polsky, Herbert H. Fisher, and Alan Rugendorf, all of Chicago, for appellant.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Miles N. Beermann and Howard A. London, of counsel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Respondent, Frank Hofstetter, appeals from an order granting exclusive possession of the marital home to his wife, Ursula Hofstetter, petitioner. Respondent raises the following issues for review: (1) whether there was evidence sufficient to justify the granting of exclusive possession of the home to the wife; (2) whether the grant of exclusive possession was proper where the home was alleged to be nonmarital property; and (3) whether the order granting exclusive possession was proper.

We affirm.

The parties were married on December 26, 1972. On March 9, 1981, Ursula Hofstetter filed a petition for dissolution of marriage from her husband, Frank. Petitioner alleged that on March 1, 1981, respondent beat and struck her; that she had no place to live; and that it was dangerous to her physical, emotional and mental well-being to reside with her husband. She asked for exclusive possession of the marital home during the pendency of the dissolution action.

On March 26, 1981, both parties testified at a hearing to determine whether the wife should have exclusive possession of the marital residence. Mrs. Hofstetter stated that she had lived with her husband at their home at 5527 North Christiana, Chicago, for 10 years. On the morning of March 1, 1981, the couple had a quarrel. Mrs. Hofstetter testified as follows:

"[THE WITNESS]: A. When he gets up, he started to screaming at me, where is the breakfast, okay, so I put the water on the stove and I start to making one and he hollered and hollered and started hitting me.

[MR. LIEB]: What did he hit you with?

A. With his fist and he has a gun at home.

\* \* \*

BY MR. LIEB: What if anything did he do with the gun on this occasion?

A. He beat me over the head with the gun, with his fist and made lots of bruises on my body and he kicked me and I was crying, I was upset. Then later when my mother called me, he shot—

MR. HOFSTETTER: You are under oath.

THE WITNESS: I am, that's right. You did this twice.

THE COURT: You talk to me.

BY MR. LIEB: Now, when you said he hit you with the gun, what part of your body did he hit you on?

A. On my head, on the door.

\* \* \*

Q. Did he do anything else with that gun other than hit you with it?

A. Put it to my head and shot it and broke my teeth and all that.

Q. Did he leave marks and bruises?

A. Well, you seen some of them.

Q. Yes, I did, they are not here to show the Court. Where were these bruises?

A. Well, my head was all—

Q. And another part of your body?

A. My stomach, my feet, my back. He took the ironing board and started to iron me.

Q. I don't understand that?

A. There was an iron.

Q. An iron that you iron clothes with?

A. Yes, and he lay on my back and he said, you son of a bitch, and he called me names and got foam coming on his face and I am afraid.

\* \* \*

BY MR. LIEB: Okay, what did you do after he was beating you?

A. Well, my mother called, she came. She wanted to make peace at home, but he started screaming and he pushed me out of the door and chained the lock and left me in one coat and one skirt the whole week.

Q. Where are your clothes now, the bulk of your clothes?

A. Well, part of the clothes are with me now, but part are at home.

Q. Did he make any further threats of physical violence against you?

A. Yes, he did, he's going to kill me."

On cross-examination, Mrs. Hofstetter admitted that after the quarrel, she did not call the police or seek medical attention. Testimony also established that the quarrel began around 11:30 a.m. and that Mrs. Hofstetter left the house around 6 p.m. Petitioner stated that she was unwilling to live with her husband because he was violent.

Frank Hofstetter admitted that during the first week of March 1981 he struck and beat his wife and after the beating, she left their home. He denied hitting her with a gun. According to Mr. Hofstetter's testimony, the following occurred:

"[THE WITNESS]: So I was hungry. I did ask my wife what happened to the promise about breakfast, she said to me, I am putting the water on in the kettle, if you want to have breakfast right away, I will show you where the eggs are in the refrigerator, you can do it yourself. This is the way it started, and she walked by me, sort of bumped me, went into the other room expecting me to make breakfast, and then this thing gets started, then I hollered at her, she hollered at me, and this went on for a while and then she became furious and so did I. I should have calmed down and walked out of the house."

At the conclusion of the hearing, the judge granted exclusive possession of the home to petitioner.

Respondent argues that there was insufficient evidence to justify the order granting exclusive possession of the marital home to the wife.

Section 701 of the Illinois Marriage and Dissolution of Marriage Act (hereafter Act) (Ill. Rev. Stat. 1979, ch. 40, par. 701) governs the granting

of exclusive possession of the marital residence to either spouse pending final determination of the cause. Under the Act, the court has authority to grant exclusive possession if (1) a party has filed a verified petition seeking temporary eviction from the marital home, and (2) the physical or mental well-being of either spouse is jeopardized by occupancy of the marital residence by both spouses.

■■ We hold that there was sufficient evidence for the trial judge to determine that the husband's presence in the marital home would jeopardize the wife's physical and emotional well-being. The findings of the trier of fact will not be disturbed unless manifestly against the weight of the evidence. (*In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 100, 393 N.E.2d 1065, 1068.) Petitioner testified that her husband struck her with his fist, an iron and a gun, that he pointed the gun at her and "shot it twice." Respondent admitted that he struck and beat his wife. She left their home with only the clothes she was wearing. Even though the husband denied some of the acts alleged by the wife, where there is conflicting testimony, the determination of the witnesses' credibility is for the trier of fact (75 Ill. App. 3d 96, 100). Since the finding of jeopardy to the well-being of the wife was not against the manifest weight of the evidence, the trial judge did not abuse his discretion by awarding her exclusive possession of the marital home.

■■ Respondent also argues that the judge abused his discretion by allowing petitioner's attorney to use leading questions. The party asserting error must demonstrate to the court that prejudice resulted. (*In re Estate of Weisberg* (1978), 62 Ill. App. 3d 578, 586, 378 N.E.2d 1152, 1158.) Although an entire record is available, a reviewing court is not required to search the record for the purpose of reversing a judgment. (62 Ill. App. 3d 578, 586.) In his brief, respondent referred to only one instance of the use of leading questions and he did not demonstrate the prejudice that resulted. The admission of evidence is a matter largely within the discretion of the trial court, and its decision should not be disturbed unless such discretion has clearly been abused. (62 Ill. App. 3d 578, 586.) In our opinion, the record does not show that the trial judge abused his discretion.

■■ Respondent's next contention is that the trial court could not grant the wife exclusive possession because the home was the nonmarital property of the husband. According to respondent, the order of exclusive possession was prejudicial to his economic rights because the house might deteriorate in his absence. Respondent's argument has no merit. Section 701 of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 701) contemplates the granting of exclusive possession "until the final determination of the cause." Respondent's characterization of the home as his nonmarital property is premature. Property is characterized as marital or nonmarital

" 'only for the purposes of division on dissolution of marriage or legal separation. No attempt is made to regulate the respective interests of the spouses in property during the existence of the marriage.' " (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 572, 376 N.E.2d 1382, 1386.) Operation of the term, "marital property" is not triggered until the time of dissolution. (71 Ill. 2d 563, 573.) Thus, the trial court's order of exclusive possession to the wife pending outcome of the cause is irrelevant to the later disposition of the home as marital or nonmarital property.

■■ Finally, respondent argues that the trial court's order was defective because the court should have considered or required a bond. We hold that respondent is precluded from raising this issue on appeal because respondent did not request a bond in his pleadings nor object at the hearing to the entry of the exclusive possession order without bond. *K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 1021-22, 335 N.E.2d 156, 159-60.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

ROMITI, P. J., and LINN, J., concur.