*In re* MARRIAGE OF GARY ALAN GOFORTH, Petitioner-Appellant, *v.* MARILYN KAYE GOFORTH, Respondent-Appellee.

Fifth District No. 82—543

Opinion filed January 13, 1984.

WELCH, P.J., dissenting.

John Womick, of John Paul Womick & Associates, Chartered, of Carbondale, for appellant.

Walker & Williams, P.C., of Belleville (David B. Stutsman and Jeffrey S. Hebrank, of counsel), for appellee.

JUSTICE KARNS delivered the opinion of the court:

Petitioner Gary Goforth filed for dissolution of his marriage to Marilyn Goforth in the circuit court of Jackson County. The respondent objected to that venue and perfected an appeal to this court pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308). In a Rule 23 order (*In re Marriage of Goforth* (1981), 99 Ill. App. 3d 1205, 429 N.E.2d 212), we found that the petitioner had failed to prove that proper venue for his action existed in Jackson County and ordered that the respondent's motion to transfer venue to Washington County

be granted. On January 4, 1982, the circuit court of Washington County entered an order granting the petition for dissolution and reversing the disposition of property. Following a June 29, 1982, hearing on the property issues, the court entered an order on August 19, 1982, disposing of the property and ordering the petitioner to pay maintenance and child support. The petitioner appeals from this order, and argues that (1) the trial court made an inequitable distribution of the marital property, (2) the court improperly required the petitioner to pay the respondent's attorney fees, (3) the court erred in awarding maintenance and child support based on a percentage of the petitioner's net income, (4) the court's award of any maintenance was unsupported by the evidence presented at trial, (5) the child support award was excessive, and (6) the petitioner should not have been ordered to assume a $12,000 debt incurred by the respondent after the parties' separation. The facts in this case are largely undisputed.

The parties were married on June 15, 1968, in Tazewell County, Illinois. In September of that year, they moved to Kirksville, Missouri, where the petitioner began his studies at the Kirksville College of Osteopathic Medicine, from which he graduated in 1972. During the course of this schooling, the petitioner spent approximately six months in required externships in Oregon, Florida, Michigan, Ohio and Missouri. He received housing and a monthly allowance of $250 for this work. After his graduation, he served an internship in Grand Rapids, Michigan, for a year at a salary of $1,500 per month plus housing. While the petitioner was in school, the respondent worked at Southwestern Bell in Kirksville, then at the Osteopathic Hospital, as a receptionist. She testified that she worked continuously during that period, except for six weeks surrounding the birth of the parties' first child, and except for the periods of the petitioner's externships. The respondent testified that she did not recall her wages for this employment, but the petitioner estimated that she had earned $5,000 while he was in school. The petitioner was employed as a lab technician at the hospital at this time, and put in 25 or 30 hours a week during the school year and 50 or 60 hours during vacations. He was of the opinion that his rate of pay was three to four times that of the respondent.

Following the completion of the petitioner's internship in Grand Rapids, during which time the respondent was employed part time, the parties moved to Florida, where they remained for approximately two years. After the couple's first year there, the respondent took employment at a clinic where the petitioner worked. While in Florida, the petitioner earned between $30,000 and $35,000 annually. In 1975,

the parties moved to Nashville, Illinois, where the respondent remains with the parties' three children. She did not work outside the home until 1979, but the petitioner became a salaried employee at the Family Medical Practice in Nashville and Okawville. His gross earnings from his employment were $53,557.76 in 1977, $63,574.74 in 1978, $71,925.91 in 1979, $90,384.47 in 1980 and $92,205.04 in 1981. Additionally, the Family Medical Practice pays for the petitioner's automobile, plus gasoline and repairs, malpractice insurance and health insurance for the petitioner and his family. In 1979, the respondent started to work at a flower shop in Nashville, where she was paid the minimum wage for a work week of 16 hours, or greater, as business required. She was so employed until she accepted a job at a jewelry store in Nashville in early 1982. In that position, she earned $3.35 per hour and was normally scheduled to work 35 hours per week. At the time of the property disposition hearing, she was still employed by the jewelry store.

The parties' estimates of their own living expenses were not contradicted at trial. The respondent, who retained custody of the parties' three children, testified that her monthly expenses were as follows: food, $600; telephone, $80 to $90; children's clothing, $200; her clothing, $100 to $150; gasoline, $95; auto insurance, $100; homeowners' insurance, $35; property taxes, $95; payments on a television, $25; payments on encyclopedias, $15; children's entertainment, $60 to $65, and her entertainment, $12 to $15. These figures excluded expenses for vacations and birthday and Christmas presents, as well as $150 for monthly utilities at the marital residence, which the petitioner customarily paid. The respondent testified that after the petitioner left that residence in September 1980, she borrowed a total of approximately $12,000 from the Farmers' and Merchants' Bank of Nashville to assist in paying for living expenses, including such items as vacations and birthday and Christmas presents.

The petitioner stated that he lived in a house, which he rented, with Sue Bockentin, a registered nurse who earns between $1,000 and $1,200 per month, and who pays for her own expenses. His monthly rent at that residence was $250, the utilities, $150, and his personal expenditures for food he estimated at $240. In his answers to the respondent's interrogatories, the petitioner represented his monthly clothing and laundry expenses at $125, transportation expenses at $50 and recreation at $100 to $150. He also introduced at trial a list of expenses which showed entries of $180 per year for books, magazines and newspapers, $240 for cigarettes and liquor, $2,616 for disability and life insurance and $1,200 for "miscellane-

ous." He also paid $600 per year for family medical and dental expenses not covered by insurance, and, as noted above, paid the real estate taxes and utility bills for the marital home.

The parties' only significant tangible assets are the marital home, the household goods and the car driven by the respondent. The house was appraised at $68,500, which figure is not seriously challenged, and the household goods were valued at $8,541. The petitioner thought that the personal property was worth nearly $1,000 more than that figure. The respondent's automobile was valued at $3,900 by the petitioner. The parties also carry insurance policies on themselves which have a cash value of more than $2,000.

Against these debts stand the parties' substantial liabilities, which include loans to pay for the petitioner's schooling and the parties' living expenses, in addition to three mortgages on the parties' home. The outstanding balance on those mortgages totalled $76,199.35, the balance on the parties' unsecured loans was $25,441.27, and the balance on four credit cards was approximately $4,000 at the time of the property disposition hearing. Certified public accountant John Kolisek testified that he had verified these figures and further estimated the petitioner's net income for 1982 to be at least $61,500. The petitioner's financial statement, as prepared by Kolisek, listed proposed applications of that income in 1982 to credit cards of $4,000, loan payments of $12,000 and mortgage payments of $15,000.

In its order distributing the marital property, the court granted the marital residence along with its furniture, except for a wall plaque and Christmas decorations, to the respondent, who also received the automobile which she used. The petitioner was required to assume all indebtedness, including the mortgages, which had been incurred prior to the separation of the parties, in addition to a debt of $2,000 incurred by the petitioner after that time and a debt of $12,000 incurred by the respondent after that time. The petitioner was also ordered to pay the respondent 40% of his net income, 20% of which sum (8% of petitioner's net income) would be considered maintenance and would continue only for five years, and the remaining 80% (32% of petitioner's net income) would be for child support. Under the terms of the court's order, the petitioner was required to pay $9,089.78 of attorney fees incurred by the respondent.

As noted earlier, the petitioner presents a number of challenges to the court's order, but his basic argument is that the order, taken as a whole, is completely inequitable. After the court's division of property, the respondent received the house without debt, the household furnishings and her automobile, which property was valued at approxi-

mately $81,000. The petitioner, in contrast, was ordered to assume $76,000 in mortgages, $25,000 in unsecured loans incurred prior to separation, $14,000 in unsecured loans incurred after separation, at least $4,000 in credit card debts and $9,000 in the respondent's attorney fees, for a total of $128,000. The only marital assets which he received were some Christmas decorations and a wall plaque. This disposition, he argues, is inequitable enough, but he urges this court to recall that in addition he must pay 40% of his net income for maintenance and child support. Thus, on a net income of approximately $61,000, he is required to pay $24,400 in maintenance and make payments on $128,000 in debts, while the respondent contributes nothing toward the payment of those debts.

When a dispositional order is entered upon dissolution of a marriage, it must be equitable. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238; Ill. Rev. Stat. 1981, ch. 40, par. 503(c).) In reviewing such an order, this court should consider the sum of its provisions, because the distribution of marital property both affects and is affected by the amount of maintenance (Ill. Rev. Stat. 1981, ch. 40, par. 503(c)(9)) and child support. (Ill. Rev. Stat. 1981, ch. 40, pars. 505(a)(2), (5).) The Illinois Marriage and Dissolution of Marriage Act incorporates a partnership theory of marriage, and thus an order disposing of the parties' property and awarding maintenance or child support should recognize and compensate each party for his or her contribution to the marriage. (*In re Marriage of Smith* (1981), 86 Ill. 2d 518, 427 N.E.2d 1239; *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 422 N.E.2d 635.) An important objective to be reached by the trial court in entering such an order is to place the parties in a position from which they can begin anew, in addition to providing adequate support for the children. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.) The trial court's decision will not be challenged absent an abuse of discretion. *In re Marriage of Peoples* (1981), 96 Ill. App. 3d 94, 420 N.E.2d 1072.

The trial court was held to have exceeded that discretion in *In re Marriage of Clearman* (1980), 85 Ill. App. 3d 584, 407 N.E.2d 189, *appeal after remand* (1981), 97 Ill. App. 3d 641, 423 N.E.2d 283. In that case the parties had accumulated marital assets in excess of $71,000 and marital debts of $31,519, with no significant nonmarital property. The trial court awarded the wife assets worth $65,620, including the marital home, and awarded the husband $6,200 of those assets and required him to assume all of the marital debts. In addition, the husband was ordered to pay $50 a week in support of the parties' two children, and he was directed to pay $2,000 of the wife's

attorney fees. This disposition, according to the appellate court, effectively denied the husband any share of the net wealth accumulated by the parties during the marriage. It was stated that "[s]uch a vast disparity in the proportionate disposition of marital property must be accompanied by the most extraordinary circumstances before this court can uphold it as just." (85 Ill. App. 3d 584, 587, 407 N.E.2d 189, 191.) The court found that no such circumstances existed, because both parties were employable, even if some difference existed in their economic opportunities, and neither party demonstrated a grossly disproportionate need. The cause was remanded to allow the trial court to reconsider its order. Upon remand, the court entered virtually the same disposition of property, but this was upheld on appeal, because in the interim, the wife had become seriously ill, to the extent of requiring brain surgery, and had suffered serious impairment of her vision, speech and thinking processes. *In re Marriage of Clearman* (1981), 97 Ill. App. 3d 641, 423 N.E.2d 283.

We believe that the court's order in the case at bar bears the same element of inequity that the appellate court found impermissible in the first *Clearman* case. Although the petitioner has not furnished a detailed schedule of payments or a listing of interest rates on the debts he was required to assume, it is nonetheless apparent that the petitioner will suffer much greater hardship than the respondent under the terms of the decree. On a net income of $61,000, which, of course, was the petitioner's net income for 1982, the petitioner would spend 40% of his income, or $24,400, on child support and maintenance. Taking the lowest of the petitioner's estimates of his own living expenses, it can be seen that he needs at least $15,800 to support himself. This would leave him approximately $20,000 a year to make payments on the $128,000 in debts, and, when those debts are paid, the respondent would retain all of the property for which the debts were incurred. Also, the petitioner's monthly payments to the respondent would be over $2,000, on the petitioner's salary, and that amount is nearly $500 more than the respondent's estimate of the needs of herself and the children, even without considering the respondent's income.

This distribution of property violates several of the principles we discussed earlier. It fails to recognize any of the petitioner's contributions to the marriage, by leaving him with only debts, Christmas decorations and a wall plaque. It also does not put the parties in a position from which they can begin anew. During the marriage, the parties lived considerably beyond their means, and under the trial court's order, it is only the petitioner who must shoulder the burdens

of the marital finances. This ignores authority which holds that where the partners to a marriage accumulate debts exceeding their assets, those debts must be distributed equitably. *In re Marriage of Simmons* (1981), 101 Ill. App. 3d 645, 428 N.E.2d 1032.

While we acknowledge that the parties' disparity in education and earning capacity is great (Ill. Rev. Stat. 1981, ch. 40, pars. 503(c)(7), (10)), and certainly greater than that presented in the first *Clearman* case, this does not warrant granting all the benefits of the marriage to the respondent and imposing all of its burdens on the petitioner. The court's decree must therefore be seen as an abuse of discretion. An equitable disposition would result if the trial court's order were modified.

In our disposition of this cause as initially filed, we modified the trial court's order to provide the following:

Paragraph 1 of the decree should read:

The marital home at 703 South Broadway, Nashville, Illinois, is awarded to the plaintiff, and the defendant shall sign a quit claim deed conveying her interest therein to the plaintiff. The defendant shall retain possession of the home until the youngest of the parties' three children reaches age 18 or until the respondent's remarriage, whichever occurs first. The plaintiff is ordered to pay for taxes and homeowners' insurance on the residence and is responsible for major maintenance of the home.

Paragraphs 4 and 5 of the decree should be replaced by the following paragraph:

The plaintiff shall pay the respondent $750 for maintenance and $450 for child support on the first day of each month, effective September 1, 1982. Maintenance shall continue until the first day of the month following which the youngest of the parties' three children reaches age 18 or until the respondent's remarriage, whichever occurs first. Child support shall continue until all of the children have reached age 18 or have completed their formal college education, whichever occurs later, but in no event shall continue beyond the youngest child's twenty-second birthday. Child support shall not be reduced proportionately by virtue of a child's reaching age 18 or completing his or her formal college education.

The respondent thereafter filed a petition for rehearing which convinced the majority of this court that our earlier decision did not adequately recognize and compensate respondent for her contribution to the marriage as mother and homemaker nor place her in a position

whereby she could be said to have a reasonable opportunity to begin life anew. We allowed the petition for rehearing.

Our original opinion filed in this cause noted that the Illinois Marriage and Dissolution of Marriage Act incorporates a partnership theory of marriage, and observed that any disposition of marital property should place the parties in a position from which they can begin anew. The petition for rehearing has called to our attention the impossible position in which respondent has been placed should she wish to remarry and begin life anew.

The marital home of the parties is clearly marital property (*In re Marriage of Smith* (1981), 86 Ill. 2d 518, 527 N.E.2d 1239.) There is no equity in the home as the mortgages substantially exceed its value. Our original modification of the trial court's property disposition deprived the respondent and the children of any opportunity to acquire and live in the marital home in the event respondent should remarry and begin a new marital life.

The judgment of the trial court awarded respondent 40% of petitioner's net income, defined as gross income after deductions for Federal income tax, State income tax and social security contributions. Of this amount, 20% of this sum was awarded as maintenance and was to continue for five years and 80% was awarded as child support. Thus, assuming petitioner's net income was $60,000, respondent would receive in that year $4,800, or $400 monthly as maintenance, and $19,200, or $1,600 monthly, as child support. As modified by our original opinion, petitioner was required to pay $750 monthly as maintenance and $450 monthly as child support. Should respondent thereafter remarry, maintenance would have terminated and petitioner, a doctor earning $92,000, with an obvious potential for increased income, would only have had an obligation to his former family to contribute $450 monthly towards the support of his three minor children who would also be deprived of the family marital home.

■■ With these considerations in mind, paragraph 1 of the trial court's dispositional order is modified to read:

> The marital home at 703 South Broadway, Nashville, Illinois, is awarded to the plaintiff and defendant shall execute a quit claim deed conveying her interest therein to the plaintiff. The defendant shall retain possession of the home until the youngest of the parties' three children reaches age 18 or until the defendant remarries, whichever occurs first. The plaintiff is ordered to pay taxes and homeowners' insurance on the residence and is responsible for major maintenance of the home. Defendant, however, is given the option to become the sole owner of

the marital home if within one year after this dispositional order becomes final she so notifies the plaintiff in writing and repays him any amounts he had paid for mortgage payments allocable solely to the debt owing on the purchase of the marital home, and for taxes and homeowners' insurance. Plaintiff shall thereupon convey his interest in the marital home to defendant free and clear of any interest any other person may have acquired in the property. Future mortgage payments, taxes, insurance and maintenance shall thereafter be the responsibility of the defendant.

Paragraphs 4 and 5 of the decree shall be replaced by the following paragraph:

The plaintiff shall pay the defendant $500 for maintenance and $1,500 for child support on the first day of each month, effective November 1, 1983. Maintenance shall continue for a period of five years from that date or until defendant remarries. Child support shall continue until all of the children have reached age 18 or have completed their formal college education, whichever occurs later, but in no event shall continue beyond the youngest child's twenty-second birthday. Child support shall not be reduced proportionately by virtue of a child's reaching age 18 or completing his or her formal college education.

The remaining portions of the decree should be enforced as written. The modified decree should be effective as of November 1, 1983. Pursuant to our authority under Supreme Court Rule 366(a)(5) (87 Ill. 2d R. 366(a)(5)), those modifications of the trial court's decree are so ordered.

■■ ■ Because our modification of the decree answers the petitioner's specific objections to the amount and form of the trial court's award of maintenance and child support, we need not discuss those objections further. However, the petitioner additionally challenges the trial court's assignment of a specific item of indebtedness to him, which was unaffected by our modification. This item is the $12,000 debt incurred by the respondent to defray living expenses for herself and the children between the petitioner's departure from the marital home and the date of the court's judgment. During that time, the petitioner testified, he regularly paid the respondent between $700 and $750 a month for support, but this amount was not sufficient to meet the needs of the respondent and the children and thus the debt was incurred. The petitioner argues that this debt could not be considered marital property because it accrued after he left the marital resi-

dence, that it cannot be considered temporary support because no such order was entered against him, and that it can only be thought of as maintenance in a lump sum to which, he claims, the respondent has not shown her entitlement. However, this argument, as the respondent points out, is based on a faulty premise. Property acquired after the marriage but before a judgment of dissolution is generally presumed to be marital property (Ill. Rev. Stat. 1981, ch. 40, par. 503(b); see also *In re Marriage of Hofstetter* (1981), 102 Ill. App. 3d 392, 430 N.E.2d 79), and it is the date of dissolution, not the date of physical separation, which is relevant. Consequently, the debt incurred by the respondent could properly be considered marital and was within the discretion of the court to assign to the petitioner.

 █ The petitioner's remaining assignments of error pertain to the court's award of attorney fees. He insists that the award was unjustified because the respondent did not introduce testimony pertaining to those fees. The trial court had before it in this case a four-page itemized statement of the legal services rendered the respondent and two affidavits from local attorneys expressing the opinion that those services were necessary and that the charges therefor were reasonable. Petitioner's counsel objected to the affidavits on hearsay grounds, but, as the respondent correctly observes, the court may rely upon the pleadings, affidavits on file and its own experience in fixing those fees. (*In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1118, 421 N.E.2d 1308, 1315.) While it has been indicated that attorney fees should not be awarded where there is no evidence concerning the items of service performed or the reasonableness of the fees (*In re Marriage of Brophy; In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E.2d 947), it cannot be said that the record in this case suffers from that deficiency. We find nothing to show that the amount of those fees was unreasonable. Nor was the assessment of those fees against the petitioner improper. An award of attorney fees is justifiable only if it is shown that the party seeking the award is unable to pay those fees and the other party is able to do so. (*In re Marriage of Adams* (1981), 92 Ill. App. 3d 797, 416 N.E.2d 316.) It is not necessary for a party to be destitute before a court may award attorney fees. (*Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 400 N.E.2d 56.) Here, the $9,000 in attorney fees amounts to approximately double the respondent's annual gross earnings, and she does not own any income producing assets. The petitioner's ability to pay attorney fees is considerably greater than that of the respondent's and thus supports an award of attorney fees. (*In re Marriage of Brenner* (1981), 95 Ill. App. 3d 100, 419 N.E.2d 400; *Gauger v.*

*Gauger* (1979), 70 Ill. App. 3d 378, 388 N.E.2d 123.) Accordingly, we affirm the trial court's award of those fees.

In conclusion, paragraphs 1, 4 and 5 of the judgment of August 19, 1982, are modified as we have indicated above. The remaining provisions of the judgment of the circuit court of Washington County are affirmed.

Affirmed as modified.

JONES, J., concurs.

WELCH, P.J., dissenting:

I dissent. The original proposed disposition was appropriate to the circumstances of the parties as they now exist. In the event respondent should remarry, modifications of maintenance and child support could then be made according to her needs and those of the children under the circumstances as they then exist. It was the unanimous opinion of this court that the initial disposition was fair and equitable. I see no need to alter it on speculation as to future events.