D. L. Tarjan for the use of Irene M. Lefkow and John Korowske, Appellee, v. National Surety Company, Appellant.

Gen. No. 36,039.

234

Heard in the first division of this court for the first district at the June term, 1932. Opinion filed November 14, 1932. Rehearing denied November 29, 1932.

Dent, Weichelt & Hampton, for appellant.

Irene M. Lefkow, for appellee.

Mr. Justice O'Connor delivered the opinion of the court.

Plaintiff brought suit on an appeal bond executed by the defendant as surety in an appeal from a judgment of the municipal court to this court. There was a trial before the court without a jury and a finding and judgment in plaintiff's favor of $1,365, and the defendant appeals.

The theory of the plaintiff was that the judgment entered by the municipal court in his favor, and in which the defendant executed the appeal bond, was affirmed in this court, that it had not been paid and therefore there was a breach of the condition of the bond. The defense was that the judgment had been paid by the judgment debtor in a garnishment proceeding brought in the municipal court in which the judgment debtor was garnisheed.

The record discloses that plaintiff, Tarjan, had brought suit in the municipal court of Chicago against Peter S. Sarelas, and on April 12, 1930, recovered a judgment for $1,250. From that judgment Sarelas appealed to this court, giving his bond in the usual form for $2,500 signed by the defendant as surety. This is the bond involved in the instant case. The judgment was affirmed by this court April 15, 1931. May 23, 1930, plaintiff Tarjan assigned his judgment to one of the usees in the instant case, Irene M. Lefkow, who had acted as one of his attorneys. And June 6, 1930, this assignment was filed in the municipal court in the proceeding in which the judgment was entered, and a note made of such assignment on the half-sheet by the clerk. Afterwards, on October 15, 1930, Irene M. Lefkow assigned $750 of this judgment to the other usee, John Korowske, and this assignment was like-

wise filed October 18, 1930, in the municipal court proceedings, and a note entered on the half-sheet.

September 23, 1924, the North Shore Trust & Savings Bank recovered judgment in the municipal court of Chicago against Tarjan for $1,068. A few days after the judgment in the case of *Tarjan v. Sarelas,* 261 Ill. App. 647 (Abst.), was affirmed by this court, as above stated, Sarelas told Peter Ziagos, who worked in a butcher shop and whom he had known for some time, that the North Shore Bank had the judgment against Tarjan, and that Tarjan had obtained the judgment against Sarelas in which the appeal bond was given, and Sarelas suggested that Ziagos could buy the bank's judgment for considerably less than the amount of the judgment. And very shortly thereafter, on April 21, 1931, Ziagos paid the bank $300 and took an assignment of that judgment which on April 23, 1931, he filed in the office of the clerk of the municipal court in the proceeding in which the judgment was rendered. On the same day Ziagos filed an affidavit for garnishee summons in that case, together with interrogatories. Two days later Sarelas answered the interrogatories, admitting his indebtedness to Tarjan of $1,250, being the amount of the judgment Tarjan held against him. Three days later, April 28, Sarelas and Ziagos entered into a written stipulation whereby judgment was entered against Sarelas as garnishee for $1,331.95, being the $1,250 judgment and interest thereon, and thereupon the judgment was satisfied in open court. Sarelas testified that he obtained a check for $1,331.95 from James Sotos, and he offered the check in evidence. It is drawn by Sotos to the order of Sarelas, on the Washington Park National Bank, and bears the indorsement of Peter Ziagos, but it is dated April 30, two days after the judgment was satisfied of record in open court.

Sarelas, called by the surety company, testified that he knew nothing about the assignment of the judg-

ment by Tarjan to Lefkow nor of the assignment by Lefkow to Korowske. There is other evidence to the effect that Sarelas was studying law; that he and Tarjan had a number of law suits, one against the other; that Sarelas was present at the trial of a case in the municipal court in which the files in the case in which the judgment for $1,250 was rendered, were in court and that they were examined by Sarelas and his counsel. This was before Sarelas claimed to have paid the judgment.

The court, in deciding the case, rendered an oral opinion in which he said there were two questions involved—one a question of law as to whether the filing of the assignments by the two usees in the municipal court was constructive notice to Sarelas that the judgment had been assigned, and the other question one of fact as to whether Sarelas had actual notice of the assignment of the judgment. The court then said: "The testimony of Sarelas was to the effect that he told Ziagos to go and get this judgment, . . . he told Ziagos to go and buy this judgment. . . . Ziagos says, very conveniently, he left all of that to his attorney. . . . This Appellate Court opinion . . . became part of the records . . . on the 15th day of April, 1931. On the 21st of April, according to Sarelas's own testimony, Ziagos buys this judgment and the assignment from the bank to Ziagos is dated April 21st, a week after the filing of the opinion of the Appellate Court. The check to Ziagos on the garnishment is April 30, 1931. The date of the assignment to Mrs. Lefkow is June 6th, 1930, almost a whole year [before] and there was a trial between these two people in the municipal court of Chicago in October, 1930, in which these records were brought up. Sarelas was represented by an attorney in all these proceedings. There is no question, and there is no doubt in my mind that there was notice, and there was knowledge on the part of Sarelas as to this assignment.

There is no question, too, in my mind that the maneuvering and the manipulating of these judgments was intended to deprive this assignee of the benefits she would have derived.''

We are in entire accord with the finding of the trial court. A careful consideration of all the evidence in the record leads us to the conclusion that Sarelas was scheming with the aid of Ziagos to beat Tarjan or his assignee out of the judgment. A few days after the judgment was affirmed by this court Sarelas advised Ziagos to buy the judgment of the bank against Tarjan. Ziagos was working in a butcher shop; he had never bought judgments and of course knew nothing about them, as he testified. He pays $300 for a judgment of nearly $1,100, which with interest would amount to about $1,400. He and Sarelas worked together. As soon as the judgment is assigned to Ziagos he sues out a garnishment summons and serves Sarelas; Sarelas answers that he is indebted to Tarjan in the amount of the judgment, $1,250, and consents to a judgment being entered against him for the amount of the judgment with interest, and he testified that he knew Ziagos had paid to the bank but $300 for the judgment. And although the judgment is entered on April 28 and satisfied on that date in open court, the check for the amount of the judgment which Sarelas says he gave Ziagos is dated April 30. The whole proceedings have the earmarks of a transaction that was merely colorable, as said in the case of *People v. Viskniskki,* 255 Ill. 384. If Sarelas' efforts in this regard fail of their purpose, it is not that he did not do enough but because he did too much.

What we have said renders it unnecessary to pass on the number of legal propositions argued by counsel for the defendant with which we agree, but they are of little or no importance on this appeal. One of the contentions made by defendant in this respect is that the court erred in receiving in evidence the two assign-

ments of the judgment to Lefkow and Korowske, as above stated, on the ground that the record of these assignments in the proceedings in the municipal court was not constructive notice to Sarelas that the judgment had been assigned. If Sarelas had no notice that the judgment had been assigned, the mere filing of the assignments with the clerk, as in the instant case, was not sufficient notice. *Schmidt v. Shaver,* 196 Ill. 108. But the filing of them, together with all the evidence, might tend to show actual notice to Sarelas, in which case the assignments were properly admitted. Moreover, they were entirely proper to show that the judgment has been assigned.

Further complaint is made that at the close of the case counsel for defendant submitted findings of fact and propositions of law which he asked the court to mark "refused" or "held", but the court refused to do so, contrary to section 61 of the Practice Act, Cahill's St. ch. 110, ¶ 61. While it is the duty of the court in such a case to mark the findings of fact or propositions of law as provided in section 61, yet his refusal to do so is not necessarily reversibly erroneous, and in this case it is clear that the refusal of the court did not prejudicially affect the defendant. The object of such findings of fact and propositions of law is to ascertain the theory upon which the judge decided the case. *Chicago Union Traction Co. v. City of Chicago,* 202 Ill. 576; *Gibbons v. Paducah & Illinois R. Co.,* 211 Ill. App. 138. In the instant case, the court rendered an oral opinion which we have above referred to. It clearly gave his reasons in the case. No substantial purpose would be served had the court literally complied with section 61 of the Practice Act.

Moreover, an examination of the record shows that some of the findings of fact and propositions of law submitted were not in the English language and therefore cannot be considered, because section 18 of the schedule of the Constitution of 1870 provides that judicial proceedings shall be conducted and preserved in

the English language. *Carlin v. Millers Motor Corp.*, 265 Ill. App. 353. The second and third finding of fact and the third, fourth, fifth and sixth propositions of law submitted contained the symbol "and/or" eight times. We condemned the use of this freakish fad in *Preble v. Architectural Iron Workers' Union*, 260 Ill. App. 435. That we are right in our conclusion in this respect is seen by reference to the July, August, and September numbers of the American Bar Association Journal, pp. 456, 524 and 574, respectively.

In the July number the editor-in-chief, Major Edgar B. Tolman, in an editorial condemned the use of this symbol and referred to it as "a labor-saving (?) symbol" and there said: "With regret we are compelled to note that even Congress has fallen into the use of this accuracy-destroying symbol.

"The use of this symbol arises in part from a doubt as to which of the two words should be used. Is it any solution of this doubt to leave the question to be solved by construction at a later time?

"We venture the assertion that any man who knows the meaning of the two words and the established distinctions in their use can take a modern contract or statute, bristling with this symbol, strike out every one of them and substitute the proper one of the two words, to the great clarification of the meaning of the instrument or act.

"In short, we believe the symbol to be a device for the encouragement of mental laziness even in the drafting of private contracts." And in the August issue Major Tolman, in discussing this symbol, said: "On the other hand, shall we look upon the use of this symbol as a blessing in disguise which imports into statutes and judicial procedure room for polemic controversy which might not be discovered if the old-fashioned words were used, thus providing for the practitioner unexpected sources of employment like those which flow from 'the jolly testator who makes his own will'?"

In the September number of the Journal Mr. John W. Davis of New York, a lawyer of the first order, says: "Nothing has heartened me more of recent years than the leading editorial in your current issue on the conjunction 'and/or.' I expect to spend my declining years in a crusade against this pollution of the English language. It is a bastard sired by Indolence (he by Ignorance) out of Dubiety. Against such let all honest men protest."

Hon. George W. Wickersham, a former attorney general of the United States, in the same issue says: "I read with interest your editorial in the July number of the AMERICAN BAR ASSOCIATION JOURNAL on the growing use of that barbarism 'and/or.' It is one of the worst examples of 'journalese' and assuredly has no place in any composition written by one who has a knowledge of the English language. The primary requisite of any juridical language necessarily is exactness. If a writer means to use the conjunctive he should employ the word 'and,' and if he means to express the disjunctive he should use the word 'or,' but to use this expression 'and/or' is indicative of confused thought, which should have no place in either a statute or a legal document. The English language, derived as it is from different racial origins, at best lacks precision such as the Latin languages enjoy, and if we import into it such barbarisms as 'and/or' we make confusion worse confounded. I agree entirely with the expression of your belief in the July JOURNAL that the symbol is 'a device for the encouragement of mental laziness even in the drafting of private contracts,' while its use in pleadings and court proceedings and in legislative acts is utterly unjustified." Mr. Frederick A. Scott, Statute Revision Commissioner of Connecticut, also there states that he has succeeded in preventing the use of "and/or" in any public act, although he has found it increasingly difficult to do so. And Mr. Clarence D. Meyer of Elizabeth, N. J., Supreme Court Commissioner, writes the editor of the Journal that

the stupid use of the conjunctions "and/or" should be condemned. "I have always classed their use as another 'American craze.' The English language can be made expressive or plain enough without such unsightly hieroglyphic, and I sincerely hope that other editors will emulate your example in ridiculing this silly practice." Surely a "labor-saving (?) symbol"; "accuracy destroying symbol"; "pollution of the English language"; "that barbarism"; "has no place in any composition written by one who has a knowledge of the English language"; "unsightly hieroglyphic" cannot be said to be in the English language. And the Supreme Court of Oregon has condemned the use of this symbol. *Kornbrodt v. Equitable Trust Co.,* 137 Ore. 386.

A further complaint is made that plaintiff's statement of claim does not state a cause of action because it does not comply with the provisions of section 18 of the Practice Act, the contention being that in par. 4 it is alleged that the beneficial plaintiffs, Lefkow and Korowske, became subrogated to the rights of Tarjan, but the times at which the assignments were made are alleged in a *videlicet,* and that this is insufficient. There is no merit in the contention. *Bishop v. Dignan,* 223 Ill. App. 178. Under the system of pleading in the municipal court of Chicago, plaintiff is required to state his cause of action in plain, simple language so as to inform the defendant of the claim made against him. That defendant understood the claim made is demonstrated because it filed an affidavit of merits setting up its defense. No question as to the sufficiency of the pleadings seems to have been mentioned in the trial court and it is equally obvious that the raising of it here for the first time is an afterthought and without merit.

The judgment of the municipal court of Chicago is affirmed.

*Affirmed.*

McSurely, P. J., and Matchett, J., concur.