*In re* MARRIAGE OF JOHN LIMA, Petitioner-Appellant, and JUDITH LIMA, Respondent-Appellee.

Second District    No. 2—94—0083

Opinion filed August 17, 1994.—Rehearing denied September 20, 1994.

Robert A. Chapski, Randy K. Johnson, and John P. Chapski, all of Law Office of Robert A. Chapski, Ltd., of Elgin, for appellant.

Benedict Schwarz II, of Schwarz & Ryan, of West Dundee, for appellee.

JUSTICE PECCARELLI delivered the opinion of the court:

This matter is before the court on an interlocutory appeal by petitioner, John Lima (John), pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)), from an order on January 6, 1994, awarding the exclusive possession of the marital residence, pursuant to section 701 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/701 (West 1992)), to respondent, Judith Lima (Judith).

John filed a petition for dissolution and other relief on December 28, 1993. Judith filed a counterpetition for dissolution and other relief, and a petition for exclusive possession of the marital residence and other relief, on January 6, 1994. The court heard the testimony proffered by the parties and ordered the exclusive possession of the marital residence to Judith. We reverse.

John, in his petition, alleged the parties were married on August 14, 1974. Judith, in her counterpetition, alleged the parties were married on September 14, 1974. In either event the parties have been married for about 20 years.

Judith testified on direct examination that the parties have two children, 18 and 17 years old, who reside with Judith in the marital residence in Gilberts, Illinois. She has been a diabetic since 1991, takes 58 units of insulin each day, testified that stress causes diabetic reactions, and that she probably had five diabetic reactions a week during the three months preceding the hearing. Since December 28, 1993, and before the hearing on January 6, 1994, after John filed for dissolution, her blood sugar levels dropped. She regulates her blood sugar levels. She has not changed her insulin intake nor has there been a change in her diabetic reactions. She testified that on August 4, 1990, John had sexual intercourse with her without her consent. During intercourse Judith told John she did not wish it to occur and when she told him he kept going.

Judith testified on cross-examination that prior to August 1990 John was sleeping in the basement and she was sleeping in the

master bedroom. Although they were usually sleeping in different locations in the house they would sometimes sleep together and would have intercourse prior to August 4, 1990. On August 4, 1990, John did not hold her down although his body was on top of her. She felt used and she felt bad. After intercourse Judith told John to leave the room, and he left. Prior to August 4, 1990, Judith did not place any restrictions on John regarding sexual conduct.

John continued to live in the house after August 4, 1990. Judith prepared meals and John ate them in the house, they watched TV together, and Judith did John's laundry until November 1992. John was not physically abusive to Judith prior to August 1990 nor subsequent to that date. Subsequent to August 1990 and prior to November 1992 the door to the master bedroom was unlocked and open a little bit. John would come into the master bedroom every night to say goodnight, and then walk out. He did not make a sexual advance towards her.

The court, *sua sponte*, examined Judith. During this inquiry Judith testified the diabetic reactions manifest themselves from stress and dieting "properly." When she gets low blood sugar she cannot function mentally or physically, she can't think of what she has to do, and her legs give out. In response to the court's questions, Judith now testified diabetic reactions occurred more frequently during the past year, and since the filing of the dissolution proceeding they are getting worse and she gets a few reactions a day.

Judith, called as an adverse witness, upon cross-examination testified as follows:

"BY MR. CHAPSKI:

Q. Now, Mrs. Lima, you testified earlier this morning at the temporary restraining order hearing; did you not?

A. Yes.

Q. At that time you testified that you didn't care if John was in the house one way or the other; didn't you?

A. I've never stopped him, no.

Q. That was not my question. My question is you testified at that hearing that you didn't care if he was in the house or not; didn't you?

A. Yes."

John testified on direct examination that for approximately six months prior to August 1990 his bedroom was in the basement of the marital residence. On the night in question he went to the master bedroom and had sexual intercourse with his wife. He did not use force. He did not hold her down. After intercourse Judith said she felt she was being used and it was not very romantic. Subsequent to

August 1990 and prior to November 1992 while he lived in the house he saw Judith every day, Judith prepared dinner and he ate dinner with her, she did his laundry and they watched TV together. After August 1990 he did not have sexual intercourse with Judith nor did he make any attempts to have sexual relations with her because "she kind of indicated to me that she didn't want to." Subsequent to November 1992 until December 1993 John went into the marital residence daily to see the family, pick up his mail and service his truck. John and Judith resided and lived in the marital residence as husband and wife until August 1990. They continued to reside in the marital residence, although occupying separate sleeping quarters, without sexual contact, until November 1992. In November 1992, by mutual consent, John moved to Elgin, Illinois, and presently lives in an apartment. There was no cross-examination of John. John was examined as an adverse witness prior to the direct examination of Judith. John was questioned about his current address, where his clothes were kept, and where he intended to live.

●1 Pursuant to section 701 of the Act (750 ILCS 5/701 (West 1992)), the court has the authority to grant exclusive possession if (1) a party has filed a verified petition seeking exclusive possession of the marital residence, and (2) the physical or mental well-being of either spouse is jeopardized by occupancy of the marital residence by both spouses. (*In re Marriage of Hofstetter* (1981), 102 Ill. App. 3d 392.) The judgment of the trial court is entitled to great weight and will not be reversed unless it is against the manifest weight of the evidence. (*Glenview State Bank v. Village of Deerfield* (1991), 213 Ill. App. 3d 747, 759.) The findings of the trier of fact will not be disturbed unless manifestly against the weight of the evidence. *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 100.

A verdict is against the manifest weight of the evidence where, upon review of all evidence in the light most favorable to the prevailing party, an opposite conclusion is clearly apparent, or the jury's finding is palpably erroneous and wholly unwarranted, is clearly the result of passion or prejudice, or appears to be arbitrary and unsubstantiated by evidence. (*Usselmann v. Jansen* (1994), 257 Ill. App. 3d 978, 981; *Renfro v. Allied Industries Equipment Corp.* (1987), 155 Ill. App. 3d 140, 156.) The trier of fact in *Usselmann* was a jury. The trier of fact in the instant case is the trial judge. The findings of fact by the jury and the findings of fact by the court in a nonjury case are judged by the same standard.

It must appear that a conclusion opposite to that reached by the trier of fact is clearly evident for a judgment to be against the manifest weight of the evidence. Judith's testimony on January 6,

1994, that on August 4, 1990, she felt used and described the instance of sexual intercourse as lacking romance was the last time intercourse occurred. Prior to August 4, 1990, while John occupied the basement sleeping quarters and Judith occupied the master bedroom, they had intercourse. Subsequent to August 4, 1990, while John remained in the marital residence, and after he left the residence, John and Judith did not have intercourse, nor was there any evidence of a suggestion of engaging in intercourse, either consensually or nonconsensually. The one incident of intercourse on August 4, 1990, does not support the conclusion that the physical or mental well-being of Judith is jeopardized.

Judith testified she was diagnosed in 1991 as a diabetic. She takes 58 units of insulin every day. She has taken the same number of units during the parties' separation, subsequent to the August 4, 1990, incident and subsequent to the filing of the dissolution proceeding. She has a diabetic reaction when her blood-sugar level drops from time to time. The onset of diabetes, intake of insulin and self-diagnosed drop in blood sugar level resulting in a diabetic reaction does not support the conclusion that the physical or mental well-being of Judith is jeopardized.

The trial judge said, "I do not believe, for the record, that Mr. Lima would do anything directly or indirectly either physically or mentally to cause any further acts but I believe his presence there, given the facts that have existed, will definitely jeopardize Mrs. Lima's physical and/or mental well being [*sic*]."

●2 It is not clear whether the trial court found the conduct of John to jeopardize the physical or the mental well-being of Judith. The word "and" is conjunctive, connecting words and phrases. It suggests physical and mental well-being is affected. The word "or" is disjunctive, used to express an alternative and describes dissimilar conditions being affected. The combination "and/or" connects terms without particularity of what it intends to describe. The combination is a deliberate amphibology, susceptible of more than one interpretation and is a purposefully ambiguous expression, useful in its self-evident equivocality. It is not clear what the trial court found. (*People v. Rudd* (1980), 90 Ill. App. 3d 22, 25, citing *Tarjan v. National Surety Co.* (1932), 268 Ill. App. 232, 241-42.) In *Tarjan* (268 Ill. App. at 240-42), the court quoted from several authors criticizing the use of "and/or," citing *Preble v. Architectural Iron Workers' Union of Chicago, Local No. 63* (1931), 260 Ill. App. 435, 442.

It is clear from the evidence adduced at trial there was no jeopardy to either the physical or mental well-being of Judith prior to January 6, 1994. Nor was there evidence of any future jeopardy to

the physical or mental well-being of Judith. Thus no rational trier of fact viewing the evidence most favorable to Judith could have agreed with the trial court. The judgment of the trial court is unsubstantiated by the evidence and is against the manifest weight of the evidence.

Accordingly, we reverse the judgment of the circuit court of Kane County.

Reversed.

INGLIS, P.J., and BOWMAN, J., concur.