# Illinois Official Reports

## Appellate Court

*In re Marriage of Engst*, 2014 IL App (4th) 131078

| | |
|---|---|
| Appellate Court Caption | In re: MARRIAGE OF DAVID ENGST, Petitioner-Appellant, and MICHELLE ENGST, Respondent-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-13-1078 |
| Filed | April 3, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where the evidence was sufficient to warrant a finding that the mental well-being of respondent or the parties' children was jeopardized by both parents' occupancy of the marital residence, the trial court's award of exclusive possession of the residence during the pendency of the marriage dissolution proceedings to respondent pursuant to section 701 of the Illinois Marriage and Dissolution of Marriage Act was not against the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 13-D-392; the Hon. Charles G. Reynard, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michelle N. Schneiderheinze and Jon D. McLaughlin (argued), both of Bloomington Law Group LLC, of Bloomington, for appellant.<br><br>Helen E. Ogar (argued), of Ogar & Miller, of Bloomington, for appellee. |

JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Turner and Steigmann concurred in the judgment and opinion.


**OPINION**

¶ 1        Petitioner, David Engst, filed a petition for dissolution of his marriage to respondent, Michelle Engst. During the proceedings, Michelle filed a petition for exclusive possession of the marital residence, which the trial court granted. David appeals the court's interlocutory order pursuant to Illinois Supreme Court Rule 307 (eff. Feb. 26, 2010), arguing (1) the court's order was against the manifest weight of the evidence and (2) the court erred by denying his motion to dismiss Michelle's petition for exclusive possession of the marital residence. We affirm.

¶ 2                                    I. BACKGROUND
¶ 3        The parties were married in September 1992 and had two children: A.E., born in April 2000; and C.E., born in July 2004. On August 2, 2013, David filed his petition for dissolution of marriage.

¶ 4        On August 14, 2013, Michelle filed a petition for exclusive possession of the marital residence. She asserted both parties had the legal right to reside in the marital residence with the minor children. Michelle also alleged as follows:

> "That the mental well-being of the minor children of the marriage would be jeopardized by the continued occupancy of the marital residence by both spouses and it is for the mental well-being of [Michelle] and the minor children that exclusive possession of the marital residence be awarded to [Michelle]."

Michelle requested the trial court enter an order granting her exclusive possession of the marital residence during the pendency of the divorce proceedings. The same date, she also filed a petition for temporary relief, requesting the court order David to contribute to the payment of all marital obligations, award her temporary custody of the minor children, and order David to pay temporary child support.

¶ 5        On October 25, 2013, David filed a motion to dismiss Michelle's petitions pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)). Relevant to this appeal, he argued Michelle's filings were legally insufficient and did not contain sufficient facts to establish each element of a cause of action.

¶ 6        The same date David filed his motion, the trial court conducted a hearing in the matter. Initially, it considered the motion to dismiss. David's counsel argued Michelle's petition contained only vague and conclusory allegations, rather than specific allegations of fact, making it "virtually impossible" for him to prepare any kind of defense. Michelle's counsel argued the petitions were sufficient to put David on notice of Michelle's claims. The court denied David's motion to dismiss, stating, although it preferred to have more detailed pleadings, it was not persuaded that David had been "meaningfully disadvantaged."

¶ 7 The matter proceeded on Michelle's requests for temporary relief and both parties testified. Michelle stated she worked as a junior high school teacher and resided in the marital residence with David and the parties' two children. She was seeking an award of temporary custody of the children and stated that, historically, she had been primarily responsible for the children's care. Michelle testified David worked for UPS and, during his employer's busy season, was sometimes not home until 7 or 8 p.m. She acknowledged David assisted with transporting the children.

¶ 8 Michelle testified she was seeking exclusive possession of the marital residence because she felt there was a lot of tension and stress in the home. She stated David had been physically aggressive toward her and noted occasions when he would try to block her access to a doorway or to another area of the house. According to Michelle, David would "stick his chest out" or "move as [she was] going by" and then blame her for bumping or pushing him. She acknowledged that David never hit her and that she had never called the police but stated she was physically afraid of David and there was a constant threat of physical aggression toward her. Michelle testified she felt intimidated, bullied, antagonized, and uncomfortable.

¶ 9 Michelle stated David was also verbally aggressive toward her. She testified he criticized her, swore at her, and called her names in front of the children. Michelle stated David used a "derogatory tone" when speaking to her, which she described as sarcastic, not pleasant, mocking, and degrading. Further, she stated she was intimidated by David's "weird behaviors," and testified as follows:

> "For example, he might come upstairs from the basement and he just starts talking and repeating himself. 'Lights are on again. The lights are on.' Just weird behaviors that he'll constantly repeat and say over and over, and then he'll say 'Hum, that's funny, the lights are on again', and waiting to get a response, and he'll repeat it until I say something like, 'I didn't know they were on. I'm sorry I left them on.' "

Michelle noted other odd behavior, stating David would engage in "baby talk," or whisper about something he did not approve of or that he perceived Michelle had done wrong. She noted he contradicted himself by saying one thing and then later saying the opposite. He would then become upset when Michelle acted on his original statements. Michelle believed the tension and stress in the home was affecting the children and that the children were "stressed out." She stated the parties' youngest daughter would cry and both children expressed that they did not like it when their parents argued.

¶ 10 On cross-examination, Michelle acknowledged that she also made derogatory comments to David, telling him that he was acting like a two-year-old and that he was being immature. She agreed she may have used profanity toward David but did not recall any specific instances. Michelle also testified both parties had used cellular phones to record events that occurred between them.

¶ 11 David denied ever physically striking Michelle but acknowledged instances when both parties refused to move out of a doorway that the other intended to go through, resulting in one person brushing up against the other. David denied any other acts of physical aggression between the parties. Although he testified that Michelle had called him names within the last few months, he had no concerns about residing in the same home as her. David denied seeing any symptoms of stress in the children. He also denied ever videotaping Michelle but stated both parties had pretended to record each other and that was "something wrong that [they] both ha[d] done."

¶ 12    Following the parties' arguments, the trial court granted Michelle temporary custody of the children and exclusive possession of the marital home, finding her "quite credible in describing the conduct that she *** alleged." It concluded the parties needed to physically separate so that the children would no longer be exposed to a "highly negative" situation. The court believed the children were suffering in their current situation and were hurt by their parents' frequent arguing.

¶ 13    On November 25, 2013, David filed a notice of interlocutory appeal pursuant to Rule 307. In that notice, he asserted his challenge to the trial court's October 25, 2013, order, granting exclusive possession of the marital residence to Michelle.

¶ 14                                    II. ANALYSIS

¶ 15    Initially on appeal, we address an issue of jurisdiction alluded to in Michelle's brief. As stated, David filed an interlocutory appeal pursuant to Rule 307. However, Michelle's brief contains a statement of jurisdiction in which she asserts Rule 307 does not allow for an interlocutory appeal from the denial of a motion to dismiss. For the reasons that follow, we find jurisdiction appropriate under Rule 307(a)(1).

¶ 16    Rule 307(a)(1) provides that appeals may be taken from an interlocutory order of the trial court "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Feb. 26, 2010). Here, although the trial court denied David's motion to dismiss Michelle's petition for exclusive possession, it went on to consider the merits of her petition and granted her request for temporary relief. Section 701 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/701 (West 2012)) sets forth the requirements for granting such a request and also states that when those requirements are met, the court may "enter *orders of injunction*, mandatory or restraining, granting the exclusive possession of the marital residence to either spouse." (Emphasis added.) The court's October 2013 order from which David appealed granted Michelle injunctive relief and, therefore, an interlocutory appeal pursuant to Rule 307(a)(1) was appropriate. See also *In re Marriage of Levinson*, 2012 IL App (1st) 112567, ¶ 1, 975 N.E.2d 270 (noting an interlocutory appeal was taken pursuant to Rule 307(a)(1) from a circuit court order that awarded temporary exclusive possession of the marital residence under section 701 of the Act (750 ILCS 5/701 (West 2010))).

¶ 17    We next address the merits of David's appeal, which challenges the trial court's order granting exclusive possession of the marital residence to Michelle. David argues both that the court erred in denying his motion to dismiss Michelle's petition for exclusive possession and that the court's decision awarding Michelle exclusive possession was against the manifest weight of the evidence. We disagree on both counts but first consider David's contentions with respect to the court's denial of his motion to dismiss.

¶ 18    David argues the trial court erred in failing to grant his motion to dismiss pursuant to section 2-615 of the Code because Illinois is a fact-pleading state and Michelle's petition for exclusive possession was "void of any facts that would be sufficient to establish each element of a cause of action." In response, Michelle maintains the court committed no error in denying David's section 2-615 motion to dismiss because such a motion addresses only defects in a "pleading" and her petition, which sought temporary relief in the pending dissolution proceeding, was a motion rather than a "pleading." We agree with Michelle.

- 4 -

¶ 19    A section 2-615 motion "applies only to the dismissal of pleadings." *In re Marriage of Sutherland*, 251 Ill. App. 3d 411, 414, 622 N.E.2d 105, 108 (1993); see also *In re Marriage of Wolff*, 355 Ill. App. 3d 403, 407, 822 N.E.2d 596, 601-02 (2005) (holding a motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2002)) applied only to the dismissal of pleadings and not to a motion to reconsider). "A pleading *** consists of a party's formal allegations of his claims or defenses" while "[a] motion is an application to the court for a ruling or an order in a pending case." *Wolff*, 355 Ill. App. 3d at 407, 822 N.E.2d at 601-02.

¶ 20    In this instance, Michelle's petition for exclusive possession was not a pleading but a motion for temporary relief. Section 501(a) of the Act (750 ILCS 5/501(a) (West 2012)) sets forth the manner in which a party to dissolution proceedings may be granted temporary relief, providing that either party may "move" for various forms of temporary relief. 750 ILCS 5/501(a) (West 2012). "Section 501(a)(3) is an all-inclusive provision which allows a party to move for *** temporary relief, such as temporary custody; exclusive possession of the marital residence; sequestration of assets; and temporary attorney fees." *In re Marriage of Meyer*, 197 Ill. App. 3d 975, 978, 557 N.E.2d 242, 245 (1990); 750 ILCS 5/501(a)(3) (West 2012).

¶ 21    Here, the record shows Michelle "move[d]" for temporary relief in the form of exclusive possession of the martial residence as provided for by section 501(a) of the Act. 750 ILCS 5/501(a) (West 2012). Her request was not a "pleading" that consisted of formal allegations of her claims or defenses, but a motion, *i.e.*, "an application to the court for a ruling or an order in a pending case." *Wolff*, 355 Ill. App. 3d at 407, 822 N.E.2d at 601-02. Therefore, Michelle's petition for exclusive possession of the marital residence was not subject to dismissal pursuant to section 2-615 of the Code and, on that basis, we find the trial court committed no error in denying David's 2-615 motion to dismiss.

¶ 22    Finally, on appeal, David argues the trial court's decision to award exclusive possession of the marital residence to Michelle was against the manifest weight of the evidence. He contends the evidence presented did not support a finding that the physical or mental well-being of either Michelle or the children was "jeopardized" by both parties' occupancy of the marital residence. David describes the parties' living situation as "typical" for that of a divorcing family and argues that, even assuming Michelle's testimony was accurate and credible (as the trial court found), "there would still not be sufficient evidence to meet [Michelle's] burden." David notes neither party sought an order of protection and there was no history of physical abuse between them.

¶ 23    Section 701 of the Act (Act) (750 ILCS 5/701 (West 2012)) sets forth the circumstances under which a trial court may grant a request for exclusive possession of the marital residence. That section provides as follows:

    "Where there is on file a verified complaint or verified petition seeking temporary eviction from the marital residence, the court may, during the pendency of the proceeding, *only in cases where the physical or mental well being of either spouse or their children is jeopardized by occupancy of the marital residence by both spouses*, and only upon due notice and full hearing, unless waived by the court on good cause shown, enter orders of injunction, mandatory or restraining, granting the exclusive possession of the marital residence to either spouse, by eviction from, or restoration of, the marital residence, until the final determination of the cause." (Emphasis added.) 750 ILCS 5/701 (West 2012).

¶ 24    "Accordingly, pursuant to section 701 of the Act, the court has the authority to grant exclusive possession if (1) a party has filed a verified petition seeking exclusive possession of

the marital residence, and (2) the physical or mental well-being of either spouse or their children is jeopardized by the occupancy of the marital residence by both spouses." *Levinson*, 2012 IL App (1st) 112567, ¶ 33, 975 N.E.2d 270. "We review orders granting exclusive possession pursuant to section 701 under a manifest weight of the evidence standard." *Levinson*, 2012 IL App (1st) 112567, ¶ 33, 975 N.E.2d 270 (citing *In re Marriage of Hofstetter*, 102 Ill. App. 3d 392, 396, 430 N.E.2d 79, 82 (1981)). "A judgment is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent." *In re Parentage of J.W.*, 2013 IL 114817, ¶ 55, 990 N.E.2d 698.

¶ 25    "When interpreting a statute, the primary objective is to give effect to the legislature's intent, which is best indicated by the plain and ordinary language of the statute itself." *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25, 998 N.E.2d 1227. "Words should be given their plain and obvious meaning unless the legislative act changes that meaning." *Hartney*, 2013 IL 115130, ¶ 25, 998 N.E.2d 1227. As stated, section 701 of the Act permits a trial court to grant exclusive possession of the marital residence to one spouse "only in cases where the physical or mental well being of either spouse or their children is jeopardized by occupancy of the marital residence by both spouses." 750 ILCS 5/701 (West 2012). Given its plain and ordinary meaning, the word "jeopardize" means "to expose to danger or risk." Merriam-Webster's Collegiate Dictionary 627 (10th ed. 2000).

¶ 26    Here, the trial court's decision to grant Michelle temporary exclusive possession of the marital residence was not against the manifest weight of the evidence. In reaching its decision, the court found Michelle's testimony credible, determined the children were being exposed to a "highly negative" situation, and believed the children were suffering and being hurt by their parent's frequent arguing. Evidence presented at the hearing supported the court's findings. Further, although the court did not make specific findings with respect to section 701's requirements–which would have aided our review–there was sufficient evidence from which it could have found the mental health of either Michelle or the children was "jeopardized" by both spouses' occupancy of the marital residence.

¶ 27    Michelle testified David had been physically and verbally aggressive toward her. She felt physically afraid of him, intimidated, bullied, antagonized, and uncomfortable. Michelle described instances when David stood in front of her and blocked her access to a doorway or to another area of the house. David acknowledged that behavior when testifying on his own behalf. Michelle also testified David criticized her, swore at her, called her names, and threatened to "knock [her] head off." David did not deny that those events had occurred. The evidence also showed some of the parties' arguments and conflicts occurred in front of the children. Michelle believed the situation in the home was affecting the children and noted the parties' youngest daughter would cry and both children expressed that they did not like it when their parents argued. Again, the trial court found Michelle's testimony more credible than that of David, who denied any negative impact on the children from the parties' situation. An opposite credibility determination from that made by court is not clearly apparent.

¶ 28    On appeal, David points out that the parties had no history of physical abuse and neither had ever sought an order of protection. However, section 701 of the Act allows the trial court to grant a request for exclusive possession where the "mental well being of either spouse or their children is jeopardized." 750 ILCS 5/701 (West 2012). Thus, a situation need not rise to the level of physical violence before section 701 relief may be granted. In this case, the evidence presented was sufficient to support a finding that the mental well-being of either Michelle or the children was adversely affected by the occupancy of both spouses in the marital residence.

¶ 29    On appeal, the parties cite four cases that concern requests for exclusive possession of a martial residence. David argues the cases support reversal of the trial court's order in the instant case while Michelle argues they are factually distinguishable. We note resolution of a request for exclusive possession under section 701 depends upon the particular factual circumstances of each case and all of the cases cited by the parties necessarily turned on the specific facts presented. We find the cases cited by the parties factually distinguishable from the case at bar. Further, none of the cited cases requires reversal of the court's decision here.

¶ 30    David relies heavily on *Levinson*, 2012 IL App (1st) 112567, ¶ 44, 975 N.E.2d 270, wherein the First District reversed the trial court's grant of exclusive possession of the marital residence to the wife, finding it clear from the evidence that "there was no jeopardy to either the physical or mental well-being of [the wife] or the children." In that case, the parties resided in the martial residence on a "birdnesting" schedule, "wherein each party occupie[d] the marital residence during his or her parenting time, but vacate[d] it during the other's parenting time." *Levinson*, 2012 IL App (1st) 112567, ¶ 6, 975 N.E.2d 270. In reversing the trial court's judgment, the First District gave the word "jeopardy" its plain and ordinary meaning and declined to define it in a more expansive manner as the trial court before it had done. *Levinson*, 2012 IL App (1st) 112567, ¶¶ 31-36, 975 N.E.2d 270.

¶ 31    Further, in rendering its decision, the First District found evidence that the wife and children experienced "stress" due to the "birdnesting" arrangement was insufficient to support an order of exclusive possession under section 701. *Levinson*, 2012 IL App (1st) 112567, ¶ 37, 975 N.E.2d 270. Specifically, the court stated as follows:

> "[The wife] alleged that sharing the marital residence with [the husband] causes her stress. She also alleged that the children feel stress and confusion due to the lack of stability as pertains to the birdnesting arrangement. Although she refers to the alleged [physical] altercation of May 9, 2010, we note that the emergency petition for order of protection was voluntarily dismissed and the trial court did not make any findings regarding the incident. Moreover, Dr. Palen [(the court-appointed evaluator)] testified that he disagreed with [the wife's] assessment that the birdnesting visitation schedule 'is seriously endangering the mental and emotional well-being of the children.' *** [T]his combination of factors is clearly not sufficient under section 701 to constitute jeopardy." *Levinson*, 2012 IL App (1st) 112567, ¶ 43, 975 N.E.2d 270.

¶ 32    As stated, *Levinson* is factually distinguishable from the present case. Most obvious is that, unlike in *Levinson*, the parties in this case resided in the marital home together on a full-time basis. Next, in the case at bar, we find no indication from the record that the trial court applied an incorrect standard or an overly expansive definition of "jeopardize." Further, the evidence presented in this case involved more serious concerns than the "stress" alleged in *Levinson*. Here, Michelle testified that David was physically and verbally aggressive toward her, she felt intimidated and bullied by his behavior, and the children witnessed the parties' conflicts. Finally, in *Levinson*, the wife's testimony regarding the children's well-being was contradicted by the testimony of a court-appointed evaluator. In this instance, Michelle's testimony was not similarly contradicted.

¶ 33    In his brief, David contrasts *Levinson* with *Hofstetter*, 102 Ill. App. 3d at 396, 430 N.E.2d at 82, wherein the First District found sufficient evidence existed for the trial court to determine a husband's presence in the marital home would jeopardize the wife's physical and emotional well-being. In that case, the court noted the wife's testimony "that her husband

struck her with his fist, an iron and a gun, that he pointed the gun at her and 'shot it twice.' " *Hofstetter*, 102 Ill. App. 3d at 396, 430 N.E.2d at 82.

¶ 34    To the extent David contends the evidence presented in this case had to reach the level of what occurred in *Hofstetter*, we disagree. As discussed, the trial court had authority under section 701 to grant exclusive possession of the marital residence to either spouse upon a showing that "the physical *or* mental well being of either spouse or their children is jeopardized." (Emphasis added.) 750 ILCS 5/701 (West 2012). A lack of physical violence or abuse between the parties does not warrant reversal of the trial court's decision where the evidence otherwise shows a spouse or child's mental well-being was being adversely affected.

¶ 35    Additionally, in *Hofstetter*, 102 Ill. App. 3d at 396, 430 N.E.2d at 82, the court held that "[e]ven though the husband denied some of the acts alleged by the wife, where there is conflicting testimony, the determination of the witnesses' credibility is for the trier of fact." As stated, in this case, the trial court found Michelle more credible than David. The record reflects no error in that finding.

¶ 36    The parties cite two additional cases: *In re Marriage of Lima*, 265 Ill. App. 3d 753, 638 N.E.2d 1186 (1994); and *In re Marriage of Lombaer*, 200 Ill. App. 3d 712, 558 N.E.2d 388 (1990). However, resolution of those cases turned on the particular facts presented in each case, which we find distinguishable from the facts presented here.

¶ 37    In the instant case, sufficient evidence was presented from which the trial court could find the mental well-being of either Michelle or the children was jeopardized by both parents' occupancy of the marital residence. An opposite conclusion from that of the court is not clearly apparent and, as a result, the court's award of exclusive possession of the marital residence to Michelle was not against the manifest weight of the evidence.

¶ 38                                    III. CONCLUSION
¶ 39    For the reasons stated, we affirm the trial court's judgment.

¶ 40    Affirmed.