2025 IL App (3d) 250299

Opinion filed December 5, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| MICHAEL CALCAGNO, | ) | of the 18th Judicial Circuit, |
| | ) | Du Page County, Illinois. |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-25-0299 |
| and | ) | Circuit No. 22-DC-625 |
| | ) | |
| DAWN CALCAGNO, | ) | The Honorable |
| | ) | Neal W. Cerne, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court, with opinion.
Justices Hettel and Bertani concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        Michael and Dawn Calcagno are married and, until recently, lived in the same marital home. In June 2025, the trial court granted Michael's motion for temporary exclusive possession of the marital residence pursuant to section 501(c-2) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/501(c-2) (West 2022)). Dawn appeals, arguing that the trial court relied on improperly admitted evidence and that the exclusive possession order was contrary to the manifest weight of the evidence. Michael seeks dismissal of this appeal for lack of appellate jurisdiction. We deny the motion to dismiss and affirm the trial court.

## I. BACKGROUND

Michael and Dawn Calcagno were married on November 30, 2002, in Kauai, Hawaii. They have five children, at least two of whom are emancipated. Michael filed a petition for dissolution of marriage on July 13, 2022, and Dawn filed a counterpetition on July 29.

On February 6, 2023, Dawn moved to appoint an evaluator under section 604.10(b) of the Act (*id.* § 604.10(b)), and on September 5, the court appointed Dr. Robert Shapiro. On October 13, Michael filed a motion for exclusive possession of the marital residence pursuant to section 501(c-2) of the Act (*id.* § 501(c-2)).

In July 2024, the trial court conducted a hearing on Michael's motion for exclusive possession. Attorney Tania Harvey, the guardian *ad litem* (GAL), testified. The trial court originally appointed her as a mediator in September 2022, and she became the GAL in January 2023. She stated that she remained involved throughout the proceedings and interviewed both parents and all five children. The GAL testified that both parents acknowledged that Dawn had been estranged from the children since approximately 2020. She stated that the children did not get along with Dawn and that court-ordered therapy aimed at improving the relationship had been unsuccessful despite lasting more than a year. She further testified that Dawn did not follow therapeutic recommendations and at times isolated herself in the lower level of the home, leaving the children unsupervised.

On cross-examination, the GAL acknowledged that Dawn had never physically harmed anyone in the household and was not a violent person. The GAL described Dawn's conduct as "mental abuse" but stated that Dawn "doesn't realize what she's doing" and opined that a mental health professional's input would be helpful. She also testified to several incidents of strained

interactions between Dawn and the children. Although she acknowledged there was no threat of physical violence, she recommended granting exclusive possession to reduce conflict in the home.

¶ 7        Dawn testified that she had not been violent toward her children and denied striking or pushing her daughter during a "bathroom incident." She denied yelling at or belittling the children. Dawn agreed that the relationship with her children was strained but described positive interactions as well. She testified that if she were removed from the residence, she believed the children would refuse to see her. Several questions posed by Michael's counsel were objected to as irrelevant to the statutory standard for exclusive possession, and the trial court sustained those objections. Dawn also testified that Michael did not support her relationship with the children and that she believed he would not enforce a parenting schedule.

¶ 8        The trial court denied the motion for exclusive possession. The court observed that no psychological expert had concluded that the children were suffering mentally and that the GAL was not qualified to render mental health opinions. The court found that Dawn had not physically or emotionally abused the children, though it acknowledged significant estrangement between Dawn and the minor children.

¶ 9        Dr. Shapiro issued an interim section 604.10(b) evaluation on February 25, 2025, stating that Dawn "needs to move out of the marital home immediately" if she is to salvage her relationship with the children. His final report, issued on March 31, 2025, stated that "it is imperative that Dawn and Mike separate."

¶ 10        On March 13, 2025, Michael filed a second motion for exclusive possession, relying in part on Dr. Shapiro's conclusions. The court set the matter for hearing on June 2, 2025. At the start of the hearing, the court considered several preliminary matters. Dawn objected to admission of Dr. Shapiro's report, arguing that the evaluator was not present for cross-examination and that the

3

report constituted inadmissible hearsay. While acknowledging that the report could be reviewed pursuant to section 604.10(b), Dawn argued it could not be admitted as evidence. The court ruled that the GAL could testify regarding the contents of the report and later admitted the report over Dawn's objection, reasoning that it was the court's witness report under local rules. Dawn's motion *in limine* to bar the report was taken under advisement but not ruled upon.

¶ 11 The June 2025 hearing included testimony from Michael, who testified that cohabitation had adversely affected both him and all five children. He described each child's relationship with Dawn as strained to varying degrees. He testified that separating the parties would reduce tension and improve the children's daily lives. He also testified to being aware of Dr. Shapiro's recommendation.

¶ 12 On cross-examination, Michael identified one physical "tussle" between Dawn and one of the children. However, Michael's testimony focused on nonphysical conduct—such as missing a child's graduation party, attending events to which she was not invited, or contacting the children's friends—as examples of "mental abuse." He also acknowledged that Dawn had maintained a relationship with the youngest child.

¶ 13 The GAL testified that continued cohabitation was emotionally harmful to the children and that it was in their best interests for the parties to live separately. On cross-examination, the GAL acknowledged that she had not spoken with the children since early 2024 and did not know their current mental health status. She testified that she was not a mental health professional but stated that Dr. Shapiro's report confirmed her earlier impressions. When asked for specific examples of conduct jeopardizing the children's mental health, she referred to disputes over personal items and attendance at school events and conceded that nothing had occurred in the prior nine months to affect the children's physical well-being.

¶ 14    Following the presentation of evidence, the trial court noted that exclusive possession is an extraordinary remedy. It recognized that no single incident constituted physical or emotional abuse but found that the prolonged conflict and the parties' inability to communicate had created an untenable home environment. The court further found that the children were not speaking with their mother "for whatever reason" and concluded that, by vacating the home, Dawn could assist in repairing the relationships, which the court equated with protecting the children's mental well-being. The court granted Michael exclusive possession of the marital residence effective June 10, 2025. Dawn's motions to stay the order were denied in both the trial court and this court. In this court, Michael filed a motion to dismiss the appeal for want of jurisdiction, which we took with the case.

¶ 15                                   II. ANALYSIS

¶ 16    We consider three issues on appeal: (A) whether we have appellate jurisdiction; (B) whether the trial court improperly considered the section 604.10(b) report; and (C) whether the exclusive possession order was against the manifest weight of the evidence.

¶ 17                              A. Appellate Jurisdiction

¶ 18    Dawn filed her notice of appeal asserting that jurisdiction exists under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), which states that an interlocutory appeal may be taken from any order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Michael filed a motion to dismiss the appeal for lack of jurisdiction, arguing that an order awarding exclusive possession of a residence is not an injunctive order. We disagree.

¶ 19    Generally, temporary orders cannot be appealed before entry of a final judgment order. *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 827-28 (1994). However, orders for temporary and exclusive possession of a marital residence are treated differently. In *In re Marriage of Engst*,

5

2014 IL App (4th) 131078, ¶ 16, the court determined that an order for exclusive possession provides injunctive relief and, thus, is appealable under Rule 307(a)(1). Neither party cites *Engst*, however, and we acknowledge that *Engst* was decided under a previous version of the exclusive possession statute. That statute, section 701 of the Act (750 ILCS 5/701 (West 2012)), expressly empowered the trial court to "enter orders of injunction, mandatory or restraining, granting the exclusive possession of the marital residence to either spouse, by eviction from, or restoration of, the marital residence, until the final determination of the cause."

¶ 20    Section 701 was superseded by current section 501(c-2), which does not expressly refer to injunctive relief. 750 ILCS 5/501(c-2) (West 2022). Section 501(c-2) states, in pertinent part:

"Allocation of use of marital residence. Where there is on file a verified complaint or verified petition seeking temporary eviction from the marital residence, the court may, during the pendency of the proceeding, only in cases where the physical or mental well-being of either spouse or his or her children is jeopardized by occupancy of the marital residence by both spouses *** enter orders granting the exclusive possession of the marital residence to either spouse, by eviction from, or restoration of, the marital residence ***. *** In entering orders under this subsection (c-2), the court shall balance hardships to the parties." *Id.*

¶ 21    Thus, the legislature dropped the prior language permitting the trial court to "enter orders of injunction, mandatory or restraining," from the statute. Critically, however, the substance of an order granting exclusive possession of a marital home remained completely unchanged: the entry of that order typically changes the *status quo* and deprives a person holding an interest in real estate (their own home) of their rights of possession, use, and enjoyment. By altering the statutory language, the legislature did nothing to diminish the injunctive character of an order of exclusive

6

possession. See *In re Marriage of Paris*, 2021 IL App (1st) 200769-U, ¶¶ 17-21; *In re Marriage of Paris*, 2021 IL App (1st) 210828-U, ¶¶ 22-25 (analyzing appellate jurisdiction over an exclusive possession order in the context of Rule 307(a)(1) but finding the notice of appeal was untimely). Furthermore, the change in the statutory language is inconsequential for the purpose of determining appealability here because the Illinois Supreme Court, not the legislature, determines what is appealable. Ill. Const. 1970, art. VI, § 6; *In re Marriage of Lentz*, 79 Ill. 2d 400, 406-07 (1980). We conclude that this court has appellate jurisdiction under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017) and deny Michael's motion to dismiss the appeal.

¶ 22          B. Admissibility of the Section 604.10(b) Report and Other Evidentiary Issues

¶ 23          Dawn argues that the trial court improperly admitted Dr. Shapiro's section 604.10(b) report over her objection because it contained hearsay statements and Dr. Shapiro was not present for cross-examination. Initially, she argues that hearsay statements by minors alleging abuse or neglect must be corroborated by independent evidence, citing both section 8-2601 of the Code of Civil Procedure (735 ILCS 5/8-2601 (West 2024)) and section 606.5(c) of the Act (750 ILCS 5/606.5(c) (West 2022)). Neither section is applicable here, however, as both expressly address allegations of abuse and neglect. In ruling on Michael's motion for temporary exclusive possession of the residence, the trial court was merely required to determine whether "the physical or mental well-being of either spouse or his or her children is jeopardized by" continued joint occupancy. *Id.* § 501(c-2). The heightened statutory standards cited by Dawn are inapplicable here.

¶ 24          Next, Dawn contends that the section 604.10(b) report was inadmissible because it included hearsay statements compiled by Dr. Shapiro, who was not subject to cross-examination at the hearing. She asserts that the hearsay statements in the report are not admissible to prove the

7

truth of the matter asserted, despite constituting a valid basis for the expert opinion Dr. Shapiro expressed in his report.

¶ 25    Section 604.10(b) expressly authorizes the trial court to

"seek the advice of any professional, whether or not regularly employed by the court, to assist the court in determining the child's best interests. *** The court may review the writing upon receipt. The writing may be admitted into evidence without testimony from its author, unless a party objects. A professional consulted by the court shall testify as the court's witness and be subject to cross-examination." *Id.* § 604.10(b).

¶ 26    Because Dr. Shapiro was the court's expert witness, Michael was under no obligation to call him to testify about his report at the hearing. If Dawn wished to cross-examine Dr. Shapiro, she could have compelled him to appear at the hearing by issuing a subpoena pursuant to Illinois Supreme Court Rule 237(a) (eff. Oct. 1, 2021) to secure his appearance. She did not. Pursuant to the plain language of the statute, the trial court was entitled to "review the [expert's] writing upon receipt," which is exactly what the court did here. While, due to Dawn's timely objection, the trial court erred by admitting the report into evidence under the facts of this case, it was not error for it to consider the "advice" of Dr. Shapiro, the "professional" appointed by the court itself "to assist [it] in determining the child's best interests." 750 ILCS 5/604.10(b) (West 2022). Thus, any error in admitting the report over Dawn's objection in the absence of Dr. Shapiro was harmless. The trial court was entitled to consider the opinions expressed in the section 604.10 report when it considered Michael's request for temporary exclusive possession of the marital residence. Further, the trial court's consideration of the section 604.10 report is of little consequence. As discussed below, other evidence was presented sufficient to justify the trial court's ruling.

¶ 27                                C. Propriety of Exclusive Possession

8

¶ 28    We review orders granting exclusive possession of the marital residence pursuant to section 501(c-2) of the Act under a manifest weight of the evidence standard. *In re Marriage of Levinson*, 2012 IL App (1st) 112567, ¶ 33. The trial court's judgment is entitled to great deference, and its findings will not be disturbed unless they are contrary to the manifest weight of the evidence. *Id.* A judgment is against the manifest weight of the evidence when the opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *In re Marriage of Karonis*, 296 Ill. App. 3d 86, 88 (1998). When reviewing whether a trial court's determination was against the manifest weight of the evidence, a reviewing court views the evidence in the light most favorable to the nonmovant, and where the evidence permits multiple reasonable inferences, the reviewing court will accept those inferences that support the trial court's order. *In re Marriage of Bates*, 212 Ill. 2d 489, 516 (2004).

¶ 29    As stated above (*supra* ¶ 20), the trial court's authority to grant exclusive possession of the marital residence is found in section 501(c-2) of the Act upon a showing that the physical or mental well-being of either spouse or their children is jeopardized by the presence, in the marital residence, of both spouses until the case can be finally concluded. 750 ILCS 5/501(c-2) (West 2022). Additionally, the court shall balance the hardships to the parties in granting exclusive possession of the residence. *Id.* "[R]esolution of a request for exclusive possession under section [501(c-2)] depends upon the particular factual circumstances of each case." *Engst*, 2014 IL App (4th) 131078, ¶ 29.

¶ 30    Here, Michael testified that all five children lived with him and Dawn. He described Dawn's relationship with four of the five children as "distant," "awkward," and "cumbersome." The children avoided bringing friends home, and Dawn's presence had a "very negative" impact on them. He said the children struggled emotionally with their mother, to the point that they had

9

no relationship with her. Michael identified himself as the children's primary caretaker and believed the home environment would improve if Dawn moved out. He described the household atmosphere as tense, with the children "walking on eggshells."

¶ 31    The GAL testified that, in her view, the children were being emotionally harmed by their parents living together. She noted the constant conflict and high stress in the home. She had received videos, photos, and messages evidencing arguments between Dawn and one of the children. The GAL testified:

> "My opinion is that Dawn and Michael need to be residing in different homes. It's for the best interest of the children. It's my same opinion from day one when I was appointed in this case and having come on my first status, that the conflict with the children and their mother has not changed. It's just now three children are emancipated since the start of this case."

When asked her review of Dr. Shapiro's section 604.10 report, and whether the report had changed her opinion, she testified, "No, it confirmed all my prior recommendations."

¶ 32    Following the close of proofs, the trial court found that Michael was not required to prove that a single incident caused emotional harm to the children. Rather, the court determined that the harm resulted from an accumulation of stress over an extended period of time. The court noted that the case had been pending for three years, during which the children remained in a tense and unhealthy environment from which they could not escape.

¶ 33    The court described the circumstances as deplorable, observing that while the parents could leave the situation, the children could not. It found that the home environment had been intolerable for three years, that the minor children endured it throughout that period, and that there was no apparent means to correct it. The court further concluded that preserving the children's mental

10

well-being was inseparable from efforts to repair their strained relationships with their mother. It reasoned that the children should have a positive relationship with her, but the current living arrangement made that impossible.

¶ 34 Finding that continued cohabitation was detrimental to the children's mental health, the court determined that separation was necessary. Accordingly, it granted Michael's petition and ordered Dawn to vacate the marital residence, explaining that doing so would be less traumatic for the children given their closer relationship with Michael.

¶ 35 Based on the testimony and evidence adduced at the hearing, the trial court's decision was not against the manifest weight of the evidence. The court reasonably found that the children's mental health had been harmed by the parents' ongoing cohabitation and that separation was necessary to protect their well-being. Even if Dr. Shapiro's report were disregarded, the remaining evidence—particularly the testimony of Michael and the GAL—amply supported the court's findings. Moreover, Dawn admits that the GAL's reliance on Dr. Shapiro's report was proper.

¶ 36 While the testimony shows that Dawn is not violent and did not hit the children, the real issue here does not involve physical abuse. Rather, it involves emotional and mental harm, which can be just as damaging, if not more so. Further, Dawn acknowledged during her own testimony that her relationship with the children is strained. On appeal, we cannot reweigh the witnesses' credibility, and based on the appellate record, we cannot say that the trial judge's decision was arbitrary or unreasonable. See *Karonis*, 296 Ill. App. 3d at 88 (stating the applicable standard). Accordingly, we hold that the trial court's decision was not contrary to the manifest weight of the evidence.

¶ 37        III. CONCLUSION

11

¶ 38　　　　For the reasons stated, we affirm the decision of the circuit court of Du Page County granting Michael exclusive possession of the marital home during the pendency of the proceedings.

¶ 39　　　　Affirmed.

*In re Marriage of Calcagno*, 2025 IL App (3d) 250299

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 22-DC-625; the Hon. Neal W. Cerne, Judge, presiding. |
| **Attorneys for Appellant:** | David H. Weiss, of Taege Law Offices, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eric Pittman, of Naperville, for appellee. |